STATE ᴇx Rᴇʟ. GREAT FALLS HOUSING AUTHORITY, Rᴇʟᴀᴛᴏʀ, *v.* CITY OF GREAT FALLS ᴇᴛ ᴀʟ., Rᴇsᴘᴏɴᴅ-ᴇɴᴛs.

(No. 8,077.)

(Submitted March 9, 1940. Decided March 19, 1940.)

[100 Pac. (2d) 915.]

*Mr. John L. Slattery,* for Relator, submitted a brief and argued the cause orally.

*Mr. Charles Davidson, Mr. Wellington D. Rankin* and *Mr. Arthur P. Acher,* Special Counsel for Respondents, submitted a brief and argued the cause orally.

*Mr. C. H. Hall, Amicus Curiae,* and *Mr. Edward C. Alexander,* of Counsel, submitted an original and a supplemental brief; *Mr. Hall* argued the cause orally.

*Mr. Julius J. Wuerthner,* Mayor of the City of Great Falls, appearing *pro se,* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an original proceeding wherein the relator prays for a writ of mandate to compel the city council of the City of Great Falls to comply with the terms of an agreement between the city council and the Great Falls Housing Authority wherein the council agreed to zone or re-zone in such lots and blocks as should be purchased by the Housing Authority in the City of Great Falls and to vacate and close certain streets, avenues and alleys in such lots and blocks in accordance with such agreement.

The relator's petition was filed here February 6, 1940, and after due consideration an alternative writ of mandate was issued requiring the city council and certain members thereof to comply with such agreement or show cause before this court to the contrary on the 19th day of February, 1940. On the day set the parties appeared by counsel, and *amici curiae* were also heard, and after conference participated in by the several counsel and the court, it was found that vital facts involved in the controversy were in dispute, whereupon the court declined to proceed further in the matter until such facts had been determined. By mutual consent the matter was referred to the Honorable

C. B. Elwell, District Judge of the Twelfth Judicial District, as referee, with authority to hear the evidence and make findings of fact in the premises, and return the same to this court. March 8 the referee's findings of fact were received and filed, and on March 9 counsel for the various parties appeared and extended oral arguments were heard. Briefs were filed and the court has had the matter under consideration.

At the outset we think it well to repeat what this court has often said before: That the wisdom or sound public policy of an Act of the legislature does not concern this court, so long as its provisions are found to be within the limitations of the Constitution. It is merely our province to construe the law as we find it. The constitutionality of the Housing Authority Law has been determined by this court (*Rutherford* v. *City of Great Falls,* 107 Mont. 512, 86 Pac. (2d) 656), and is not questioned in this proceeding.

The findings of the referee appear to be well supported by the evidence and no serious objection is made by the parties to any of them. From our view of the merits of the controversy, much of the evidence adduced and most of the questions of law argued are immaterial.

Briefly summarized, the referee found that, pursuant to the provisions of section 5309.4 of the Housing Authorities. Law (Rev. Codes 1935), a petition was filed with the city clerk on or about March 21, 1938, petitioning the city council to direct the city clerk to give notice by publication of a hearing to determine whether there existed the necessity to establish a Housing Authority in Great Falls; the notice was given and the meeting was held April 4, 1938, at the Council Chambers, that being the date for a regular meeting of the council; the hearing was made a special order of business; those present were invited by the mayor to express their views as to the necessity of creating the Housing Authority; some expressed themselves in favor of such a project and some against it. After the discussion the council directed the matter be referred to the Ways and Means Committee of the council, which committee was instructed to take the matter under advisement and report back, and at a

regular meeting of the council April 11, 1938, such committee reported recommending that a committee of five persons be selected from certain associations and business concerns in the city to investigate the needs and conditions relating to the subject; such committee was appointed and gave published notice of a hearing to be held at the Junior High School Auditorium April 21, 1938, at which hearing evidence was received pertinent to the purpose of the meeting; the meeting was attended and participated in by a large number of residents and taxpayers of the city and evidence was received to the effect that there were a large number of unsafe and insanitary inhabited dwellings in the city; the committee by a report in writing subscribed by all five of its members submitted its report to the city council April 23, 1938, at which time the council considered the evidence submitted by the report, in addition to the evidence received at the meeting of April 4, recounted the former steps taken in the premises and adopted a resolution which in part recited ''That unsanitary and unsafe dwellings exist'' in the City of Great Falls, and ''That there is a need of a Housing Authority as prescribed by Chapter 140 of the Montana Session Laws of 1935, Revised Codes 1935. That the mayor of said city is hereby notified to appoint five commissioners to act as said Housing Authority and to designate which of these commissioners are to serve the respective terms of one, two, three, four, and five years as provided by law.''

The referee's report then presents this significant fact, ''That the said resolution was so adopted by the unanimous vote, on roll-call of all the then members of the city council, and the same was thereupon, and on said 9th day of May, 1938, signed by J. E. Swanson, a member of said city council, who was then and there the acting mayor of said city, acting as such in the absence of the defendant Julius J. Wuerthner, Mayor of said city; and at the same time the said resolution was duly attested by and signed by W. P. Harrison, as City Clerk of said city; and that said resolution has never been rescinded or repealed and has ever since been, and now is, in effect.''

On or about May 25, 1938, the mayor appointed the five commissioners, who on June 16, 1938, presented to the Secretary of State of the State of Montana an application for incorporation of the Great Falls Housing Authority pursuant to the provisions of section 5309.4, Revised Codes, and on the same date the Secretary of State issued to such commissioners a certificate of incorporation, a copy of which is set out in the referee's report and is followed by the findings: "That ever since said 16th day of June, 1938, the said Great Falls Housing Authority has been, and now is, a public body and a body corporate and politic, with perpetual succession." Immediately after the incorporation of the Great Falls Authority, the city council appropriated $4,000 of city funds for expenses for the first year of the Authority; in August, 1938, the Great Falls Authority applied to the United States Housing Authority to have federal funds earmarked for the Great Falls project. An inspection was made by representatives of the United States Housing Authority of the local situation, and thereafter, in August, 1938, the United States Authority earmarked and set aside over $600,000 for the Great Falls project. In September, 1938, the city made a survey of the conditions of the city which the project was intended to alleviate. November 14, 1938, representatives of the United States Authority represented to the city council the necessity of a co-operation agreement between the city council and the Great Falls Authority, whereupon a motion was made to refer the proposal to the mayor, the city attorney and the judiciary committee of the city council. The mayor signed the co-operation agreement November 16, 1938. No meeting of the city council was held between the date the matter was referred to the mayor et al. with power to act and the time the co-operation agreement was actually signed by the mayor, but at a council meeting held December 5, 1938, the Judiciary Committee as shown by the minutes reported in these words:

"Judiciary Committee on Contract with Great Falls Housing Authority. The Judiciary Committee and City Attorney reported and recommended that the Mayor be authorized to enter

into and sign the Cooperation Contract with the Great Falls Housing Authority.

"(Signed) ARIO, JAAP, Judiciary
Committee.

"MURPHY, City Attorney.

"On motion of Alderman Ario, duly seconded, the report of the committee was declared adopted (by unanimous vote.)"

The "by unanimous vote" clause was added to the minutes by the city clerk subsequent to the time the minutes were originally written up, and no other city officer appears to have had any part in making such addition to the minutes. This will be adverted to later under another heading.

The referee then refers to the case of *Rutherford* v. *City of Great Falls*, 107 Mont. 512, 86 Pac. (2d) 656, filed in this court November 26, 1938, as an original proceeding, in which the constitutionality of the Housing Act and the proceedings taken up to that time by the Great Falls Housing Authority were passed upon. The housing acts were upheld as well as all things theretofore done by the local Authority, our decision being announced January 4, 1939. Following that decision the Great Falls Authority after negotiations with the United States Authority obtained the approval of the latter for a loan of $632,000, and the approval of the United States Authority was followed by the approval of the President of the United States on March 30, 1939, and thereupon the Great Falls Authority entered into a loan contract with the United States Authority, and in such loan contract the Great Falls Authority . represented to the United States Authority that in its co-operation agreement with the city of Great Falls it was provided that the city council would comply with requests for the vacating of streets and alleys and zoning and re-zoning of the lands incorporated in the Great Falls project when requested to do so. July 7, 1939, the United States Authority advanced to the Great Falls Authority, $48,-000, a part of which was to be used to purchase the eight blocks selected for the project, and the United States Authority further agreed to advance $400,000 on "advance notes," such notes to be later retired when bonds were ready for delivery. This ad-

vance was to be used for the purpose of commencing building operations. July 28, 1939, the Great Falls Authority purchased and acquired clear title to the eight blocks selected. Plans were furnished by an architect for the buildings to be erected on the project and, after receiving proposals from contractors, the firm of Lease & Leigland being the lowest bidder, their proposal of $551,790 was on December 15, 1939, recommended by the Great Falls Authority to the United States Authority for acceptance, and the latter part of that month the United States Authority approved the Lease & Leigland bid and authorized the local Authority to enter into a contract with Lease & Leigland, provided the city council would carry out the vacating of streets and alleys and the zoning and re-zoning theretofore agreed to be done. On May 22, 1939, before the eight blocks were purchased, before the plans and specifications were prepared, and before advertising for bids, a resolution was presented to the city council providing for the vacation of certain streets and alleys and referred to the Housing Committee of the council, a new city council having in the meantime come into power. Consideration of the resolution was postponed from May 31 to June 12, 1939, again postponed until June 19, again to June 26, and again until July 17, 1939, at which time a motion that it do not pass was adopted.

January 2, 1940, the Great Falls Housing Authority requested in writing that, pursuant to the contract of November 16, 1938, the city council vacate certain streets and alleys, and in a separate request of the same tenor requested that the eight blocks purchased for the Great Falls project be zoned and re-zoned. The council refused to grant either request.

The referee then recounts facts to the effect that four councilmen have at all times voted in favor of granting the requests and six have opposed such requests, and that the mayor has at all times favored granting the requests. That at the election in April, 1939, four of the aldermen opposing the requests were elected and took office the first Monday of May following. Certain ordinances are then copied in the referee's report upon

which the opposing councilmen obviously base their opposition to the Housing project.

It will be noted that in so far as the referee's findings of fact show, no question was raised at the hearing before him as to the regularity of the proceedings of the city council in the adoption of the resolution of April 23, 1938, following the report of the Ways and Means Committee of the council, when the council recited in the resolution then adopted that there was need for a Housing Authority in Great Falls, and then notified the mayor to appoint five commissioners to act as said Housing Authority, specified the term for which each should be appointed, and that such resolution was, on roll call, adopted by a unanimous vote, signed by the acting mayor and the city clerk, that thereafter the mayor appointed such commissioners and they proceeded to have the Authority thus authorized incorporated, and that such resolution of the council has not been rescinded or repealed and is now in effect.

Respondents center their attack on the record of the proceedings at the council meeting at which the city officials were authorized to enter into a contract with the Great Falls Authority by which the city obligated the council to vacate streets and alleys and zone and re-zone the lands selected for the Housing project.

The relator grounds its contentions in support of the legal status of the Great Falls Housing Authority on the regularity of the city council's acts in creating the Authority, and thereafter upon the provisions of the Housing Authorities Law, Chapter 404 of the Revised Codes, to the exclusion of the general municipal statutes. On the other hand, the respondents attack the legal status of the Great Falls Authority, and contend that all acts of the city council relative thereto must be governed by the statutes relating to municipal corporations. It is our opinion that the relator is correct, and the respondents in error.

After the city officials of Great Falls, proceeding under the provisions of section 5309.4 of the Housing Law, determined, in the exercise of their discretion to empower the mayor to appoint commissioners to proceed with the incorporation of

the Great Falls Housing Authority, appropriated money for overhead expenses for the first year, and did other acts of similar import, the general municipal statutes ceased to have any further application in the premises and all things thereafter done and performed in relation to the Great Falls Housing Authority passed under the exclusive control of the provisions of the Housing Authorities Law, sections 5309.1 to and including 5309.36 of the Revised Codes. If that were not the intention of the legislature in enacting the Housing Authorities Law, we can conceive of no reason why it was necessary to authorize the incorporation of an independent corporation to carry the purpose of the Act into effect, nor why the federal Act required a separate corporation for such purposes. The city officials, it appears to us, could have been authorized to act in the premises. The federal government through the United States Housing Authority furnishes the money, is responsible for the bonds, for the success of the project, from which the revenues to pay the bonds must be derived. The official machinery of the municipality was merely employed to determine the necessity for the creation of the Authority and that having been done as the free act of the city council, it had no further discretionary function to perform in the premises.

The Housing Authorities Law, as it is designated in the Revised Codes, is a special Act, complete in itself, enacted for a special purpose, its operation confined to the particular project, and any fears that the Act can be abused to vacate Central Avenue or any other street, avenue or alley in the city are groundless. The commissioners acting for the Great Falls Housing Authority, after the city officials exercised their discretion in authorizing its creation, must confine their activities to looking after the management of the project and obtaining the results for which it was created. It is under the same legislative control, except as otherwise provided by its contract obligations with the United States Housing Authority, that the city is itself.

The Housing Authorities Law, being a special Act, must be construed without regard for the general municipal statutes which relate to purely municipal affairs. (*State ex rel. Special*

*Road Dist.* v. *Mills,* 81 Mont. 86, 98, 261 Pac. 885; *In re Wilson's Estate,* 102 Mont. 178, 56 Pac. (2d) 733, 105 A. L. R. 367, and cases cited.)

In construing the Act it is necessary to keep these facts in ▮ view: A municipality in this state is a state agency, created by the legislature for the convenience of administering local government. This court said in *City of Helena* v. *Helena Light & Ry. Co.,* 63 Mont. 108, 207 Pac. 337, 339: "A city is but a political subdivision of the state for governmental purposes, owing its very existence to the legislative will, and capable of exercising only such powers as are granted, either directly or by necessary implication. * * * The streets of a city are public highways (section 1612, Revised Codes 1921), and though the city is charged with the duty of keeping them in repair, and the cost of maintenance is imposed upon the city, nevertheless jurisdiction over them is primarily in the state, and the city acts with respect to them subject to the general laws of the state." (See, also, *City of Helena* v. *Kent,* 32 Mont. 279, 80 Pac. 258, 4 Ann. Cas. 235; *State* v. *Stark,* 100 Mont. 365, 52 Pac. (2d) 890; *State ex rel. Gebhardt* v. *City Council,* 102 Mont. 27, 55 Pac. (2d) 671.)

"A city of this state is a creature of statute. Independently of legislation it cannot exist—cannot exercise any functions whatever. In the absence of constitutional limitations, the Legislature would be free to prescribe for a city such powers and privileges as it deemed best." (*McClintock* v. *City of Great Falls,* 53 Mont. 221, 163 Pac. 99, 101, see, also, *Wibaux Imp. Co.* v. *Breitenfeldt,* 67 Mont. 206, 215 Pac. 222; *State ex rel. City of Butte* v. *Police Court,* 65 Mont. 94, 210 Pac. 1059; *Milligan* v. *City of Miles City,* 51 Mont. 374, 153 Pac. 276, L. R. A. 1916C, 395.) And unless a power is vested in the municipality by express law, or by necessary implication therefrom, the presumption is against the exercise by the city of any such power. (*State ex rel. City of Billings* v. *Billings Gas Co.,* 55 Mont. 102, 173 Pac. 799; *Sharkey* v. *City of Butte,* 52 Mont. 16, 155 Pac. 266; *Shapard* v. *City of Missoula,* 49 Mont. 269, 141 Pac. 544.)

The city council of the city of Great Falls, since it regularly authorized the creation of the Great Falls Housing Authority, must comply with the provisions of the Act in so far as their co-operation is required. This is in effect the mandate the legislature addressed to all cities of the state which elect to create a Housing Authority within their jurisdiction. We said in *State ex rel. Helena Housing Authority* v. *City Council of City of Helena,* 108 Mont. 347, 90 Pac. (2d) 514, 518: "Holding, as we must, that the matter of carrying out the plan contemplated by sections 5309.1 to 5309.36, supra, constitutes a public or governmental function, rather than a proprietary or private one, the state's right to compel cities to make expenditures therefor cannot be denied. (*State ex rel. Gebhardt* v. *City Council,* supra.) It is this difference that distinguishes the case from that of *State ex rel. City of Missoula* v. *Holmes,* 100 Mont. 256, 47 Pac. (2d) 624, 100 A. L. R. 581, and *State ex rel. Kern* v. *Arnold,* 100 Mont. 346, 49 Pac. (2d) 976, 100 A. L. R. 1071. This conclusion is especially true where the city is given the right in the first instance to pass upon the question of the existence or nonexistence of the necessity for the housing project, and has found that such necessity exists and has, by its own affirmative act, created the Authority. Under such circumstances it must follow that the city has given its consent to assume the burdens of the Act as well as to receive benefits therefrom. The case is, therefore, distinguishable from that of *State ex rel. Gerry* v. *Edwards,* 42 Mont. 135, 111 Pac. 734, 32 L. R. A. (n. s.) 1078, Ann. Cas. 1912A, 1063."

We think it well to say that after proceeding with the creation of the Authority, as above mentioned under section 5309.4, whether the contract involved here be found to have been legally executed or not, the obligation on the city council to make a new contract, the terms of which have already been agreed to, is no longer a discretionary matter. Drafting and executing the contract is merely the completion of the general obligation the city assumed when it authorized the creation of the Great Falls Housing Authority and its execution was a mere ministerial duty. The refusal of the city council at the meeting of July 17,

1939, to comply with the requests of the Authority to vacate the streets and re-zone the location was a useless act. The acts of the city council of a contractual nature cannot be repudiated by any subsequent council, whether the membership of the council be the same or not. When the council authorized the creation of the Great Falls Authority it assumed all the obligations involved essential to a perfected project.

In *State ex rel. State Sav. Bank* v. *Barret*, 25 Mont. 112, 119, 63 Pac. 1030, 1032, in construing section 11 of Article III of the Constitution of Montana, this court said: ''The legislative assembly can no more impair the obligation of such a contract than it can the obligation of a contract made between individual persons. While a change in the form of obtaining redress may be made, provided a substantial remedy is given or remains, the obligation of a contract depends nevertheless upon its terms, and the means which the law in existence at the time it was entered into afforded for its enforcement. A statute which changes the terms of an agreement by imposing new conditions, or dispensing with those expressed or implied, is a law which impairs the obligation of a contract.''

In regard to the subsequent addition to the minutes of the ▉ meeting of the city council of December 5, 1938, such changes ordinarily cannot be made without the authority of the council, either expressly or by implication. The attack on this irregularity is made admittedly on the ground that it was made in violation of the statutory provisions relating to the proceedings of a municipal corporation. It was made after the city council elected to come under the provisions of the Housing Authorities Law, and it immediately becomes apparent that the following provisions of that law, instead of the municipal statutes, apply: Section 5309.27 provides: ''That insofar as the provisions of this Act are inconsistent with the provisions of any other law, the provisions of this Act shall be controlling.'' And again in section 5309.34 we find the following provision: ''The powers conferred by this Act shall be in addition and supplemental to the powers conferred by any other law.'' In section 5309.30 we find this provision: ''Any law of statute to

the contrary notwithstanding, any gift, grant, sale, conveyance, lease or agreement provided for *in this section* may be made by the state, its subdivisions and agencies, and any county, city, or municipality of the state without appraisal, public notice, advertisement or public bidding.'' These statutes are in direct conflict with some of the provisions of those relating to municipalities, and, of course, were intended to supersede such statutes in Housing Authority matters. What is the meaning of these statutes unless it is intended that anything authorized in the Housing Authorities Law shall be proceeded with independent of municipal Acts relating to purely city affairs.

Next we are called upon to determine whether section 5309.13 ▮ required strict conformance with general laws or only a conformance with general laws so far as they do not hinder the carrying out of the Act as intended by the legislature. Considered in connection with section 5309.27, section 5309.13 can only mean that when the general laws are referred to and required to be generally applied, they shall be applied only when such application will not defeat the purpose of the special Act.

Again, it is urged that if the city alderman by mandamus can ▮ be compelled to enact an ordinance to re-zone the city and vacate the streets, the right of referendum will be denied the people of Great Falls. This right of referendum is contained in section 5061, Revised Codes 1935, and provides that within 30 days after the passage of an ordinance or resolution such ordinance or resolution may be, on petition of qualified electors, submitted to a vote of such electors. If the electors of the city desired that the resolution of the council creating the Authority be referred, it was necessary that such action be taken within 30 days after its passage. To answer the respondents' argument on this particular point, we refer to section 5060, Revised Codes, which is the main section dealing with the right of referendum. This section specifically provides that an ordinance or resolution in the nature of an emergency measure is excepted from the provisions of the Referendum Act.

It cannot be doubted that the ordinance or resolution sought to be passed was one of emergency character required for the

purpose of carrying out the emergency provisions of a legislative Act. This particular proposed re-zoning ordinance stems from the original resolution providing for the creation of the Authority and the execution of the contract which were held to be of emergent character by this court in the case of *Rutherford* v. *City of Great Falls,* supra. If the original purpose was one of emergency, then any steps which were necessary to the final realization must themselves be emergent. For this reason, together with the fact that the Housing Authority Act is also one of emergency, we hold the contention that the right of referendum would be abridged has no force in this case.

Another question arises as to whether the writ of mandamus will lie to compel the city council to take the necessary steps to vacate and re-zone the plot purchased by the Housing Authority. We have heretofore said in this opinion that when the city council regularly authorized the creation of the Great Falls Housing Authority, any act or thing the council was thereafter required to do in order to bring the Housing project to completion was purely a ministerial act imposed upon the city council, a state agency of the state government. Such being the case, mandamus will lie. This conclusion follows a long line of decisions by this court.

We are of the opinion that the city council may not now be heard, under the rule of estoppel, to question the validity, on any ground, of the contract which it attacks. After both the city and the federal government expended large sums of money and incurred obligations of vast magnitude, the council's opposition to this project comes too late. The question of estoppel, however, need not be passed upon here. We rest our conclusions upon the ground that the Housing Authorities Law is a special Act and supersedes the purely municipal statutes upon which the respondents depend, and on the further ground that the legislature is imposing the duties that are imposed upon the city council by the Housing Act is merely calling upon one of its agents, over which it has practically complete control, to aid in perfecting a state project.

This opinion is not intended and is not to be construed to impair the local self-government or home rule powers of municipal corporations, as defined in *State ex rel. City of Missoula* v. *Holmes*, 100 Mont. 256, 47 Pac. (2d) 624, 100 A. L. R. 581, and in *State ex rel. Gebhardt* v. *City Council of Helena*, 102 Mont. 27, 55 Pac. (2d) 671.

Under section 9858, Revised Codes, relator is entitled to its costs, but it appearing that the respondents defended the proceeding in good faith, the costs will be taxed against the city. The record containing no proof of the attorneys' fees incurred by relator, all damage resulting from respondents' act must be deemed to have been waived. (*State ex rel. Golden Valley County* v. *District Court*, 75 Mont. 122, 242 Pac. 421.)

Let the writ issue.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, ERICKSON and ARNOLD concur.

Rehearing denied April 2, 1940.