STATE ex rel. HELENA HOUSING AUTHORITY, RELATOR, v. CITY COUNCIL of CITY of HELENA, et al., RESPONDENTS.

No. 9185.

Submitted March 18, 1952. Decided March 29, 1952.

242 Pac. (2d) 250.

Messrs. Loble & Loble, and Mr. Gene A. Picotte, all of Helena, for relator.

Mr. David R. Smith, Mr. Paul T. Keller, Helena, for respondent.

Mr. Picotte, Mr. Lester H. Loble, Mr. Smith and Mr. Keller argued orally.

MR. JUSTICE METCALF:

Original Proceeding. The relator is a public corporation, organized under the provisions of R. C. M. 1947, secs. 35-101 to 35-146, and exercising the powers and performing the duties provided therein. The respondents are the mayor and commissioners who are the legally constituted city council of the city of Helena, a city of the first class and a municipal corporation organized and existing under the provisions of Chapter 31, Title 11, R. C. M. 1947.

On November 25, 1949, the Helena Housing Authority applied to the Public Housing Administration of the United States for a reservation of urban low-rent public housing and for a pre-

liminary loan of $24,000. The 1949 amendments to the Housing Act of 1937 prescribed the pre-requisites necessary for the approval of such applications:

"In recognition that there should be local determination of the need for low-rent housing to meet needs not being adequately met by private enterprise—

"(a) The Administration shall not make any contract with a public housing agency for preliminary loans (all of which shall be repaid out of any moneys which become available to such agency for the development of the projects involved) for surveys and planning in respect to any low-rent housing projects initiated after March 1, 1949, (i) unless the governing body of the locality involved has by resolution approved the application of the public housing agency for such preliminary loan; and (ii) unless the public housing agency has demonstrated to the satisfaction of the Administration that there is a need for such low-rent housing which is not being met by private enterprise; and

"(b) the Administration shall not make any contract for loans (other than preliminary loans) or for annual contributions pursuant to this chapter with respect to any low-rent housing project initiated after March 1, 1949, (i) unless the governing body of the locality involved has entered into an agreement with the public housing agency providing for the local cooperation required by the Administration pursuant to this chapter; and (ii) unless the public housing agency has demonstrated to the satisfaction of the Administration that a gap of at least 20 per centum has been left between the upper rental limits for admission to the proposed low-rent housing and the lowest rents at which private enterprise unaided by public subsidy is providing (through new construction and available existing structures) a substantial supply of decent, safe, and sanitary housing toward meeting the need of an adequate volume thereof." U. S. Housing Act of 1937, as amended, sec. 15(7), 42 U. S. C. A. sec. 1415(7).

In compliance with these requirements the City Council of

the City of Helena on December 5, 1949, adopted resolution 3883 as follows:

"Whereas, the Housing Authority of Helena, Montana, is applying to the Public Housing Administration in accordance with the provisions of the United States Housing Act of 1937, as amended, for a preliminary loan in the amount of $24,000.00, to cover the costs of surveys and planning in connection with the development of not to exceed approximately 60 dwelling units of low-rent public housing; and

"Whereas, there exists in the City of Helena, Montana, a need for such low-rent public housing, at rents within the means of low-income families, especially families of living or deceased veterans and servicemen, which need is not being met by private enterprise; and

"Whereas, such a condition constitutes a menace to the health, safety, morals and welfare of the inhabitants of the City:

"Now, Therefore, Be It Resolved by the City Council of the City of Helena, Montana:

"That the City Council of the City of Helena, Montana, does hereby approve the Application of the Housing Authority of Helena, Montana, to the Public Housing Administration for a Preliminary Loan in an amount not to exceed $24,000.00, to cover the costs of surveys and planning in connection with the development of not to exceed approximately 60 dwelling units of low-rent public housing in the City of Helena, Montana; and does hereby declare its intent to enter hereafter into an agreement with said Housing Authority for local cooperation by the City in the provision of said low-rent public housing which may be required by the Public Housing Administration pursuant to the United States Housing Act of 1937, as amended."

On January 3, 1950, the Public Housing Administration approved the application for a preliminary loan of $24,000 subject to the approval of the President of the United States, and made a Program Reservation for 60 dwelling units to the Helena Housing Authority. The President gave his approval on February 15, 1950.

On February 24, 1950, the relator and the Public Housing Administration entered into a preliminary loan contract and $24,000 was allocated and of that sum $4,800 was advanced to the relator for immediate use in preliminary surveys and planning. Before any further advances could be made the preliminary loan agreement required that the City Council of the City of Helena enter into a satisfactory cooperation agreement providing for local cooperation required by 42 U. S. C. A. sec. 1415(7)(b)(i), supra; and that any legal question affecting the power of the local authority to enter into an annual contributions contract be disposed of.

Accordingly on February 24, 1950, the city attorney of the city of Helena gave an official opinion that resolution No. 3883 "was duly and legally adopted by the City Council of the City of Helena, Montana, and that said City Council had legal authority to pass said Resolution and that said Resolution is in full force and effect."

On February 27, 1950, the relator and the city of Helena entered into a cooperation agreement which contained the usual covenants that the city would provide the residents of the housing area with public services including educational facilities, police, fire and health protection; that the city would vacate such streets, road and alleys within the area as might be necessary to its development and "insofar as the City may lawfully do so, grant such waivers of the building code of the City as are reasonable and necessary to promote economy and efficiency in the development and administration of such Project; and make such changes in any zoning of the site and surrounding territory of such project as are reasonable and necessary;" and "cooperate with the Local Authority by such other lawful action or ways as the City and Local Authority may find necessary in connection with the development and administration of such project."

By the terms of the cooperation agreement the city and the Helena Housing Authority jointly agreed that "so long as any contract between the Local Authority and the P. H. A. for

loans (including preliminary loans) or annual contribution, or both, with respect to any project shall remain in force and effect, or so long as any bonds issued in connection with such project shall remain outstanding, this agreement shall not be abrogated, changed, or modified without the consent of the P. H. A.''

Relying on the cooperation agreement and resolution No. 3883, the Helena Housing Authority made the necessary surveys and plans and completed arrangements to carry .out the terms of the agreement with the Public Housing Administration.

On December 27, 1951, bids for the construction of the 60 dwelling units were called for. On January 23, 1952, the bids were opened and the general construction contract was awarded to Palmer Construction Company, Great Falls, Montana, the lowest bidder. Other contracts for work in connection with the construction were also awarded so that the relator assumed contingent obligations in excess of $500,000.

On January 22, 1952, the City Council of the City of Helena first passed ordinance No. 1455. This ordinance was finally passed and duly adopted on January 29, 1952. Ordinance No. 1455 provides that no extension, construction,· enlargement or addition to or of any housing units shall be made under the authority of the Housing Authority Law, R. C. M. 1947, secs. 35-101 to 35-146, unless the same shall be submitted to the electors of the city of Helena, Montana, and receive an affirmative vote in favor thereof.

Subsequently on February 11, 1952, the city of Helena first passed and on February 18, 1952, finally passed and approved ordinance No. 1456. Section 1 of this ordinance declares: ''That the cooperative agreement between the Helena Housing Authority or Public Housing Agency and the City of Helena, Montana, dated the 27th day of February, 1950, be, and the same is hereby cancelled and set aside, and that the same shall not be carried out by the City of Helena, Montana.'' The ordinance also provides in section 1 that no further cooperative agreements shall be entered into unless the proposal has been submitted to the

voters of the city of Helena and approved by them. Section 2 is in substance a local declaration of the requirements of 42 U. S. C A. sec. 1415(7) (a) (ii), (b) (ii), that no low-rent housing construction shall be approved unless the Helena Housing Authority has demonstrated that there is a local need for low-rent housing which is not being met by private enterprise and that a gap of at least twenty per cent. has been left between the upper rental limits for admission to the housing units and the lowest rent at which private enterprise can provide decent, safe and sanitary housing. Then there is this additional requirement, "and, unless there has been an affirmative vote of a majority of the electors of the city of Helena, Montana, at any election for that purpose."

The remaining sections of ordinance No. 1456 provide for the effective date of the ordinance, a general repealing clause, the elections at which the question may be submitted, and a declaration that the purpose of the ordinance is to comply with the 1949 amendments to the Federal Public Housing Act that there should be a local determination of need for low-rent housing before any low-rent housing should be built.

By proclamation of the mayor the people of Helena, Montana, were notified that ordinance No. 1456 would be referred to them for rejection or approval at the general city election on March 24, 1952.

On February 29, 1952, the Palmer Construction Company filed a regular application for a building permit from the city engineer as building inspector, in compliance with the city ordinance and in preparation to begin construction work on the 60 dwelling units for the Helena Housing Authority. The permit was issued by the city engineer but on March 3, 1952, the respondent City Council notified the contractor that the permit had been revoked and rescinded.

The relator then filed its petition for an alternative writ of mandate on March 7, 1952. Relator alleges that it has performed all the conditions of the cooperation agreement and is ready, willing and able to perform all the conditions of the

agreement that it may hereafter be required to perform. It is also alleged that the relator has expended approximately $24,000 for which it is paying interest, for plans, surveys and preliminary work and incurred further contractual obligations amounting to more than $500,000; that the action of the Helena City Council in attempting to rescind and revoke its contract by the enactment of ordinance No. 1456 has caused delay and damage to the relator and will continue to cause delay to its detriment and damage. In order to prevent irreparable damage to the relator and to the respondents, and to the people of Helena, the relator prayed for an alternative writ of mandate ordering respondents to perform their contract by issuing the Palmer Construction Company a building permit and to otherwise comply with the terms of the cooperation agreement and further requested that the City Council be restrained and enjoined from carrying out and executing the provisions of ordinances No. 1455 and 1456.

This court accepted jurisdiction of the cause and ordered the City Council to comply with its agreement or show cause before this court on March 18, 1952, why it had not done so.

On the return day the respondents filed a motion to quash the writ and by leave of court and without prejudice to their rights under such motion to quash also filed their answer to relator's affidavit and petition.

In their motion to quash the respondents contend that mandamus is not the proper remedy. However, the case of State ex rel. Great Falls Housing Authority v. City of Great Falls, 110 Mont. 318, 332, 100 Pac. (2d) 915, specifically holds that mandamus will lie in such a case as the one at bar.

The principal defense put forward by the respondents' answer is that there is no longer a need for low-rent housing in the city of Helena and that inasmuch as the Federal Housing Act in the sections above quoted requires that there be a local determination of the need for low-rent housing, when the need is no longer present they may rescind and revoke their cooperation agreement.

The respondents have misunderstood the meaning of 42 U. S. C. A. sec. 1415(7). This declaration of Congress is a condition precedent preventing the Public Housing Administration from entering into any contract with a local agency for preliminary loans or annual contributions until there has been a determination of the need for low-rent housing by the appropriate local administration. Until there has been such a determination and the execution of a cooperation agreement the federal agency cannot act. But the limitation is imposed upon the Public Housing Administration and not upon state agencies, and after the condition has been met the Public Housing Administration is free to enter into agreements and contracts with such local agencies as the Helena Housing Authority.

Montana's Housing Authority Law is the statute that defines the conditions under which a municipality and a state housing authority may negotiate with the federal agency. The Montana legislature has determined that there is a necessity in this state for safe and sanitary dwellings for persons of low income and declared that the need is in the public interest. This legislative determination was held to be correct in Rutherford v. City of Great Falls, 107 Mont. 512, 516, 86 Pac. (2d) 656.

The policy of Congress is set forth in the federal statute. The policy of the state of Montana and the means by which local housing authorities within the state cooperate with the federal Public Housing Authority is set forth in Montana's Housing Authority Law. The municipality acts under the estate law in carrying out the state's declared legislative policy.

In furtherance of that legislative policy the Helena Housing Authority was duly created after hearing. That was a determination that in the city of Helena there was a lack of safe and sanitary dwellings available to persons of low income. State ex rel. Helena Housing Authority v. City Council of City of Helena, 108 Mont. 347, 90 Pac. (2d) 514. Subsequently the low-rent housing originally provided by the Helena Housing Authority was deemed inadequate by that body. On December 5, 1950, it again came to the City Council and presented evidence

and asked for authorization to apply to the Public Housing Administration for additional housing. The City Council by the terms of Montana's Housing Authority Law was given the right to pass upon the existence or nonexistence of the necessity for the housing project. By its original declaration that there was a need for such low-income housing the City Council of the City of Helena created the Helena Housing Authority. By its subsequent affirmative determination that there was a need for 60 additional dwelling units the City Council took the necessary procedural steps to permit the Helena Housing Authority to enter into a contract with the Public Housing Administration for the financing and support of the proposed project. After these acts were done the general municipal statutes had no further application and the supervision and completion of the project passed under the exclusive control of the Helena Housing Authority.

By refusal to pass a resolution finding a local necessity for low-rent housing or by withholding its consent to the cooperation agreement, the city of Helena could prevent undesired projects from being constructed within its area. After making a finding of necessity and entering into a cooperation agreement the City Council could not resort to repudiation of the contract to justify a change of mind about the advisability of the project.

"The official machinery of the municipality was merely employed to determine the necessity for the creation of the Authority and that having been done as the free act of the city council, it had no further discretionary function to perform in the premises." State ex rel. Great Falls Housing Authority v. City of Great Falls, 110 Mont. 318, 100 Pac. (2d) 915, 920.

The City Council having exercised its discretion in passing resolution 3883 and entering into the cooperation agreement with the public corporation, that is the Helena Housing Authority, it completed its discretionary duties. Thereafter the entire control passed to the Helena Housing Authority who in turn negotiated with the Public Housing Authority for funds and contracted for the construction of the dwelling units.

602

Under the statutes and by the terms of its cooperation agreement the City Council of Helena was obliged to carry out its contractual obligations. "The acts of the city council of a contractual nature cannot be repudiated by any subsequent council, whether the membership of the council be the same or not." State ex rel. Great Falls Housing Authority v. City of Great Falls, 110 Mont. 318, 100 Pac. (2d) 915, 921.

That this was the mutual understanding of both the parties to the cooperation agreement is demonstrated by the express language of the agreement. "This agreement shall not be abrogated, changed, or modified without the consent of the P. H. A."

The attempt of the City Council to rescind and revoke its cooperation agreement with the Helena Housing Authority was an attempt to avoid the solemn obligations of a contract freely entered into. The declaration in ordinance No. 1456 that "the cooperation agreement shall be cancelled and set aside" is an attempt on the part of the city in its legislative capacity to pass an ordinance impairing the obligations of a contract.

Montana's Constitution, Art. III, sec. 11, and the United States Constitution, Art. 1, sec. 10, both prohibit the passage of a law impairing the obligations of a contract. These constitutional prohibitions are equally applicable to a municipality (5 McQuillin, Municipal Corporations, 3rd Ed., sec. 19.39) and to public corporations contracting with each other.

"As has been said by Mr. Justice Romer: 'There is a great principle which I think ought to be adhered to by this court and by every court where it can possibly do so; that is to say that a man shall abide by his contracts and that a man's contracts should be enforced as against him.' Biggs v. Hoddinott, 2 Ch. 307, 313. And to this we may add that, in the application of this salutary principle, municipalities and other public bodies must be held to the same high standard of accountability." U. S. Fidelity & Guaranty Co. v. City of Asheville, 4 Cir., 85 F. (2d) 966, 972.

Much of respondents' answer is devoted to the contention that the Helena Housing Authority misrepresented the local housing

conditions at the time that resolution 3883 was adopted and the cooperation agreement executed. Affidavits of two of the respondent city commissioners stating that they were members of the council at the time and were deceived by the representations of the Helena Housing Authority are affixed to the answer.

But the City Council sat as a tribunal hearing evidence of need before it passed resolution 3883 and executed the cooperation agreement. The whole theory of the Housing Authority Law is that the legislature has made a legislative determination of a statewide need for low-income housing and after investigation and hearing it is the function of the local governing bodies to determine if there is such a necessity in their locality. Upon evidence presented to and weighed by the City Council the members within their discretion made a finding of fact. They cannot collaterally impeach their decision solemnly arrived at as a fact finding board.

Similarly the City Council is estopped by the allegations of its own answer from attacking resolution 3883 and the cooperation agreement on the grounds of misrepresentation. Their contention is that a survey by the chamber of commerce showed adequate local housing ''during the year 1952'' and that ''early in the year 1951'' rent was decontrolled demonstrating that ''the Helena Housing situation had become entirely relieved.''

If the members of the City Council in good faith had believed that they had been deceived, their remedy, if any, was a prompt and direct action in equity to rescind and cancel the contract when they were told by the chamber of commerce that they were wrong. But they let the Helena Housing Authority continue to believe that the City Council would carry out its cooperation agreement. The Helena Housing Authority continued its survey, expended its preliminary loan of $24,000, advertised for bids and ultimately on January 23, 1952, let contracts and incurred liabilities exceeding $500,000. Thereafter the Council on February 11, 1952, passed ordinance No. 1456 assuming to cancel the cooperation agreement, and it wasn't until March 3, 1952, that the building permit was revoked. The

right, if any, the city may have had to object to the contract was forfeited by the failure of the council to make a prompt and direct attack upon the contract.

The affidavit of two of the respondent city commissioners recites: "That affiants had no knowledge that the said resolution [resolution 3883] found that there was a need for low-rent housing in the City of Helena and were not apprised of that fact until after the commencement of this action."

Public officials will not be permitted to officially pass resolutions making findings of fact and then impeach such findings by declaring that they had not read them and had no knowledge of their contents. If the members of the council actually passed and approved a resolution without knowledge of its contents, that certainly constituted a grave breach of public trust. Persons dealing with the city of Helena and depending on its contracts are entitled to rely on the presumption that the city officials are aware of the contents of their official declarations and have performed their official duties.

There is no merit in any of the contentions made in respondents' answer which consists of immaterial statements; thus the case is determined on the question of law. R. C. M. 1947, sec. 93-9111.

The writ will issue ordering the City Council to comply with the terms of the cooperation agreement and issue the building permit to Palmer Construction Company.

Ordinance No. 1455 is prospective in operation and has no bearing on the matter before the court and its validity or non-validity is not in issue.

That part of ordinance No. 1456 assuming to cancel and void a contract of the city of Helena is violative of the United States and Montana Constitutions and is null and void. The other matters contained therein are already part of the statutes of the state of Montana, the federal law, or contained in the provisions of ordinance No. 1455.

The first section of ordinance No. 1456 declared to be null and void is without force or effect from its inception. It could

not be validly passed by the City Council nor can it have life breathed into it by any action of the voters of Helena.

Writ granted.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY, FREEBOURN and ANGSTMAN, concur.