ALCO UNIVERSAL INCORPORATED *v.* CITY OF FLINT

OPINION OF THE COURT

1. WORDS AND PHRASES—APPROVE—GOVERNMENT ACTION.
   The normal meaning of "approve" with relation to government action implies the power to disapprove.

2. MUNICIPAL CORPORATIONS—HOUSING COMMISSION—STATUTES.
   Section of the municipal housing facilities act providing that "All deeds, contracts, leases, or purchases entered into by the commission shall be in the name of the city or village and shall be approved by the governing body of said city or village" does not mean that the legislature thought the city commission should rubber stamp the transactions described (MCLA § 125.661).

3. MUNICIPAL CORPORATIONS—HOME RULE—CONSTITUTIONAL LAW— STATUTES—CONSTRUCTION.
   The dignity and power of a city commission cannot be lightly construed away as Michigan is a strong home-rule state; the Michigan constitution recognizes basic local authority and

REFERENCES FOR POINTS IN HEADNOTES
[1] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions, § 151 *et seq.*
[2–8] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions, § 337 *et seq.*

legislation grants liberal powers (Const 1963, art 2, § 22; MCLA § 117.4j).

4. MUNICIPAL CORPORATIONS—HOUSING COMMISSION—DEEDS—CON-
TRACTS—LEASES—STATUTES.

The legislature reserved the right to and imposed the duty of approval of all deeds, contracts, leases or purchases entered into by a Housing Commission upon the City Commission; to do otherwise would be to give the Housing Commisison a book of blank checks to write against the good name of the city (MCLA § 125.661).

5. MUNICIPAL CORPORATIONS—HOUSING COMMISSION—STATUTES—DIS-
CRETION—DEEDS—CONTRACTS—LEASES.

The legislature by word and intention provided that a city commission has the authority and responsibility to exercise its discretion in approving transactions of the nature described in a section of the municipal housing facilities act which provides that "All deeds, contracts, leases, or purchases entered into by the commission shall be in the name of the city or village and shall be approved by the governing body of said city or village" (MCLA § 125.661).

DISSENTING OPINION

ADAMS and T. G. KAVANAGH, JJ.

6. MUNICIPAL CORPORATIONS—HOUSING PROJECT CONTRACTS—MINIS-
TERIAL DUTY.

*A city's approval of housing project contracts entered into by a housing commission is a ministerial duty requiring no exercise of discretion.*

7. MUNICIPAL CORPORATIONS—HOUSING COMMISSIONS—STATUTES.

*Powers of housing commissions and their relationship with municipal governing bodies are found in and controlled by the state enabling legislation.*

8. MUNICIPAL CORPORATIONS—MINISTERIAL ACT—HOUSING.

*The language "shall be approved by the governing body", which appears in a section of the municipal housing facilities statute, requires only a ministerial act (MCLA § 125.661).*

Appeal from Genesee, John W. Baker, J., and from Court of Appeals prior to decision. Submitted September 15, 1971. (No. 42 June Term 1971, Docket No. 52,777.) Decided December 21, 1971.

Complaint by Alco Universal Incorporated against the City of Flint, the Flint City Commission, Commissioners of the Flint City Commission and the Flint Housing Commission for a writ of mandamus to compel approval of contracts and for an injunction restraining defendants from granting any project adopted by the Flint Housing Commission. Writ granted. Defendants appealed to the Court of Appeals. Plaintiff applied to the Supreme Court for leave to appeal prior to decision by the Court of Appeals. Leave granted. Reversed.

*Farhat & Burns* (by *Michael F. Cavanagh*), for plaintiff.

*Robert E. Weiss* and *Edward H. Devoe*, for defendants.

*Amicus Curiae:* Center for Urban Law and Housing, Wayne County Neighborhood Legal Services, by *Edward C. King, Michael G. Barnhart, Michael B. Bixby*, and *James W. Sisk, Jr.*

WILLIAMS, J.     My Brother Justice THOMAS G. KAVANAGH correctly observes the decision in this case turns on the construction of § 11 of the municipal housing facilities act, PA 1933 (Ex Sess), No 18, § 11 (MCLA § 125.661; Stat Ann 1969 Rev § 5.3021); § 11 provides:

"All deeds, contracts, leases, or purchases entered into by the commission shall be in the name of the city or village and shall be approved by the governing body of said city or village. Contracts for the purchase of necessary materials, leases with tenants and options need not be so approved."

The Flint Housing Commission had been duly authorized and organized pursuant to the municipal housing facilities act. As far as this case goes, the Housing Commission had processed through the Federal Government and had taken other steps with

respect to a proposal plaintiff had submitted to construct a turn-key project.

The issue engendering this case arose when the Housing Commission submitted to the City Commission certain contracts to help the Housing Commission carry out steps it had to take to be in a position to bring the proposal to fruition and the City Commission voted to drop the project without giving any reason.

The issue revolves around an interpretation of "shall be approved". Does this mean, as plaintiff contends, that the city must automatically "rubber stamp" the Housing Commission's desired action? Or does it mean, as the City Commission contends, that the city must exercise its discretion and approve or disapprove?

The normal meaning of "approve" with relation to government action implies the power to disapprove. For example, the language "shall be approved by the local legislative body" in § 17 of The Michigan Liquor Control Act, MCLA § 436.17 (Stat Ann 1971 Rev § 18.988), is recognized as requiring exercise of discretion. *Lewis* v. *Grand Rapids* (CA6, 1966), 356 F2d 276, 285 *et seq.; cert den* (1966), 385 US 838 (87 S Ct 84, 17 L Ed 2d 71). See generally 6 CJS 127 "Approve" and "Approved": discretion not necessarily implied but normally is.

Furthermore, § 11 of the municipal housing facilities act clearly suggests that with respect to certain lesser transactions it is not going to bother the City Council ("Contracts for the purchase of necessary materials, leases with tenants and options need not be so approved"). However, with respect to "All deeds, contracts, leases, or purchases entered into by the commission", the Michigan legislature specifies, "shall be in the name of the city or village and

shall be approved by the governing body of said city or village".

Does this mean the legislature thought the City Commission should rubber stamp the transactions described in the first sentence but did not have to be bothered with the second?

We do not think so.

The Michigan municipal housing facilities act is quite different from those in California, Montana and New Jersey concerning which my brother Justice THOMAS G. KAVANAGH quotes Court decisions. In fact, counsel for the City Commission claims in many respects the Michigan legislation is *sui generis*. Whether that is true or not, the three jurisdictions relied on by my brother do seem to be part of a pattern from which Michigan is quite distinct.

Michigan is a strong home-rule state. Our constitution recognizes basic local authority. Const 1963, art 7, § 22. Legislation grants liberal powers. MCLA § 117.4j (Stat Ann 1949 Rev § 5.2083); *Conroy* v. *Battle Creek* (1946), 314 Mich 210, 221. The dignity and power of a city commission cannot be lightly construed away.

In addition to leaving the power to approve certain important transactions under the power of the City Commission in § 11, the legislature also left the power of eminent domain in the City Commission under § 10.

A significant reason for all of this becomes evident in tying together the first part of the first sentence of § 11 with other parts of the municipal housing facilities act. The critical words are "All deeds, contracts, leases or purchases entered into by the commission *shall be in the name of the city* * * * ." (Emphasis added.)

The purpose behind all this becomes clear when examined in the light of later sections which make clear that revenue bonds to finance the housing projects are issued in the name of the city, not the Housing Commission (§§ 16, 17.) The city also has the power to borrow money to develop housing projects. (§§ 47, 48.) In other words the legislature wanted to increase the saleability of housing revenue bonds by having them issued in the name of the city and likewise improve the credit of the obligor on the important transaction contracts specified in the first sentence of § 11 by involving the city itself. This is why the legislature reserved the right to and imposed the duty of approval upon the City Commission. To do otherwise would be to give the Housing Commission a book of blank checks to write against the good name of the city.

In California, Montana and New Jersey the Housing Commissions have considerably more authority than in Michigan. For example, in California, Montana, and New Jersey the commissioners can be dismissed only for misconduct after notice and hearing (41A West's Cal Code Ann § 34282; 3 RCM 35–108; NJSA 55:14A–6). In Michigan the commissioners may at any time be removed by the appointing authority.

More to the point, in California the Housing Authority may contract for services (41A West's Cal Code Ann § 34314) and may "(C) Purchase, lease, obtain option upon, acquire by gift, grant, bequest, devise, or otherwise any real or personal property or any interest in property." (*Id*, § 34315.) The same is essentially true in Montana (3 RCM 35–109) and in New Jersey (NJSA 55:14A–7 [c] and [d]).

California, Montana and New Jersey commissioners have the right of eminent domain and to

issue their own bonds (41A West's Cal Code Ann § 34325 and § 34350; 3 RCM 35–109, 35–111 and 35–114; NJSA 55:14A–10 and 55:14A–12).

As already indicated because of difference in statutory authority the cases of *Housing Authority* v. *Los Angeles* (1952), 38 Cal 2d 853 (243 P2d 515), *State ex rel. Great Falls Housing Authority* v. *Great Falls* (1940), 110 Mont 318 (100 P2d 915), and *City of Paterson* v. *Housing Authority of Paterson* (1967), 96 NJ Super 394 (233 A2d 98) are distinguished. In some, other facts as well are different as in the Los Angeles case the city had already approved the contract once.

The legislature by word and intention provided that the City Commission has the authority and responsibility to exercise its discretion in approving transactions of the nature described in the first sentence of § 11. The Housing Commission was granted by the legislature broad powers to construct, maintain, and operate housing projects without supervision. Sections 27, 44, 44b among others. But the legislature did reserve to the City Commission certain responsibilities. and authority, one segment of which (§ 11) was in question here.

Answering the ringing words of Franklin Delano Roosevelt "I see one-third of the nation ill-housed, ill-clad and ill-nourished" the Michigan legislature in its wisdom provided this method to meet the crying human need of low cost housing. It is clear that they assumed that those elected by the people to represent them would be the most solicitous and most concerned about their welfare, and being nearest the people would exercise their judgment with understanding and compassion. Furthermore, where the representatives of the people in a democracy are untrue to their trust, then the people have the sacred right to substitute those who will.

The trial court is reversed. Mandamus does not lie.

T. M. KAVANAGH, C. J., and BLACK, T. E. BRENNAN, and SWAINSON, JJ., concurred with WILLIAMS, J.

T. G. KAVANAGH, J. (*dissenting*). Defendant Flint Housing Commission (hereinafter called Housing Commission) was established by Ordinance No. 1788 passed by the Flint City Commission (hereinafter called City) on July 27, 1964 pursuant to PA 1933 (Ex Sess), No 18 (MCLA § 125.651 *et seq.*; Stat Ann 1969 Rev § 5.3011 *et seq.*) known as the municipal housing facilities statute. The Ordinance provided in part:

"Said Flint Housing Commission shall have all the powers and duties vested or permitted to be vested in housing commissions by said Act No. 18, of the Extra Session of 1933, as heretofore or hereafter amended, and any laws heretofore or hereafter enacted which are supplemental thereto, it being the intention of this ordinance to vest in the Flint Housing Commission all powers and duties permitted by law."

Pursuant to the low-rent housing act, 42 USCA § 1401 *et seq.* the Housing Commission entered into a cooperation agreement with the City in December of 1967. The resolution said, in part:

"WHEREAS, the Municipality, acting by and through the Commission, shall endeavor to secure one or more contracts with the PHA for loans and annual contributions in connection with the development and administration of such low-rent housing projects, all pursuant to the United States Housing Act of 1937, as amended * * * ."

In December of 1968 the Housing Commission, as empowered by state statute[1] and authorized ordinance, accepted plaintiff's proposal to construct a turn-key project for the elderly upon land purchased for that purpose. Plaintiff is a housing developer. The proposal was designated Project 9–11. The proposal was also submitted to the United States Department of Housing and Urban Development (HUD) for approval in accordance with their rules. They likewise accepted the proposal.

In April and May of 1969 the Housing Commission submitted contracts for the hiring of cost estimators, appraisers and architect inspector[2] and an annual contributions contract[3] to the City for its approval as required under 42 USCA § 1415(7).[4]

---

[1] MCLA § 125.651 *et seq.* (Stat Ann 1969 Rev § 5.3011 *et seq.*).

[2] The Commission is authorized by statute to employ engineers, architects and consultants from time to time as necessary. MCLA § 125.655 (Stat Ann 1969 Rev § 5.3015).

[3] See 42 USCA § 1410.

[4] "(7) In recognition that there should be local determination of the need for low-rent housing to meet needs not being adequately met by private enterprise—

"(a) The Authority shall not make any contract with a public housing agency for preliminary loans (all of which shall be repaid out of any moneys which become available to such agency for the development of the projects involved) for surveys and planning in respect to any low-rent housing projects initiated after March 1, 1949, (i) unless the governing body of the locality involved has by resolution approved the application of the public housing agency for such preliminary loan; and (ii) unless the public housing agency has demonstrated to the satisfaction of the Authority that there is a need for such low-rent housing which is not being met by private enterprise; and

"(b) The Authority shall not make any contract for loans (other than preliminary loans) or for annual contributions pursuant to this chapter with respect to any low-rent housing project initiated after March 1, 1949, (i) unless the governing body of the locality involved has entered into an agreement with the public housing agency providing for the local cooperation required by the Authority pursuant to this chapter; (ii) unless the public housing agency has demonstrated to the satisfaction of the Authority that a gap of at least 20 per centum (except in the case of a displaced family or an elderly family) has been left between the upper rental limits for admission to the proposed low-rent housing and the lowest rents at which private enterprise unaided by public subsidy is providing (through new construction and available existing structures) a sub-

On July 14, 1969 the City voted to drop Project 9–11 without assigning any reason.

Plaintiff filed a complaint for mandamus in the Genesee County Circuit Court arguing that the City's function as to Project 9–11 was limited exclusively to ministerial approval of the Housing Commission's contracts. The trial judge agreed with plaintiff and granted mandamus.

Defendants filed a claim of appeal and a motion for stay of proceedings. The trial court granted the stay. We granted plaintiff's application for leave to appeal prior to decision of the Court of Appeals pursuant to GCR 1963, 852.1 because of the importance of the issue.

The basic question involved may be stated: "Is the City's approval of housing project contracts entered into by the Housing Commission a ministerial duty requiring no exercise of discretion?"

We hold it is for the reasons hereinafter set forth.

We are indebted to the Center for Urban Law and Housing, Wayne County Neighborhood Legal Services, for the brief Amicus Curiae which was filed with our permission. It helps set the perspective for determination of this controversy.

In that brief we are reminded of the public policy behind the state and Federal legislation of alleviating the misery attendant upon inadequate housing of our people. If any be unaware of the extent of the housing crisis, reference to the reports cited in

stantial supply of decent, safe, and sanitary housing toward meeting the need of an adequate volume thereof; and (iii) unless the public housing agency has demonstrated to the satisfaction of the Authority that there is a feasible method for the temporary relocation of the individuals and families displaced from the project site, and that there are or are being provided, in the project area or in other areas not generally less desirable in regard to public utilities and public and commercial facilities and at rents or prices within the financial means of such individuals and families, decent, safe, and sanitary dwellings equal in number to the number of and available to such individuals and families and reasonably accessible to their places of employment."

the Amicus briefs (*The Report of the President's Committee on Urban Housing, A Decent Home.* [1969]; 2 *United States Bureau of the Census,* Department of Commerce, *Census of Housing* [1960]; *Michigan's Housing Conditions,* Office of Planning Coordinator, Bureau of Policies and Programs [1970] will be most informative).

Our decision turns on the construction of § 11 of the housing act which provides:

"All deeds, contracts, leases, or purchases entered into by the commission shall be in the name of the city or village and shall be approved by the governing body of said city or village. Contracts for the purchase of necessary materials, leases with tenants and options need not be so approved."

The trial judge read this to require the city commission to approve the contracts here involved as a matter of form—a ministerial duty only, and issued his mandamus to do so.

The City argues that "approval" normally entails discretion and includes the right to disapprove.

While this precise question has never been decided in Michigan, the decisions of our sister states that have considered it support the suggestion that we should regard the provisions as a matter of form.

In *Housing Authority* v. *Los Angeles* (1952), 38 Cal 2d 853 (243 P2d 515) the question of the Housing Commission's authority to effectuate slum clearance was sustained. In this case, the Court, having found the city by resolution had created the Housing Authority and had entered into a cooperation agreement as required by the Federal act refused to vacate certain streets and deed land acquired for the project, affirmed the grant of mandamus in favor of plaintiff. In its opinion the Court observed the following:

"Each functioning body, the city and the housing authority, is a separate body politic vested with specific duties and powers under the Housing Authorities Law and Housing Cooperation Law to effect a state objective. Neither is functioning independently of that state law. In pursuing the state objective each is governed by the state law and neither may exercise powers not vested or recognized by that law. The city and the housing authority function as administrative arms of the state in pursuing the state concern and effecting the legislative objective.

"The city acted within its discretion in determining the local need for the functioning of the housing authority created by the state act. All considerations of wisdom, policy and desirability connected with the functioning of a housing authority in the city of Los Angeles became settled and have been resolved adversely to the adherents of the city's present position by the actions of the state and of the city in declaring the existence of the need. Upon the formation of the housing authority the state law thereupon and thereafter controlled the city and the housing authority and no other law concerning the acquisition, operation or disposition of property is applicable to the authority except as specifically provided. (Health & Saf. Code, § 34320.)

"In enacting the Housing Authorities Law and the Housing Cooperation Law the Legislature did not take from the city all power to act in connection with housing projects under the statute. *The city was given discretionary power to determine initially the need for the housing authority to function and to give approval of a proposed project.* The city was also vested with discretionary powers to be exercised pursuant to the cooperation agreement which is required under the federal act. (42 U.S. C.A. § 1415(7)(b).) *But having taken the initial discretionary action to bring the housing authority into operation and having approved a project and entered into a cooperation agreement, there was*

*nothing left to be done by either contracting party but to perform administratively whatever was necessary to carry the agreement into effect.*"  (Emphasis added.)

Similarly, in *State ex rel. Great Falls Housing Authority* v. *Great Falls* (1940), 110 Mont 318 (100 P2d 915) defendant city refused to rezone in conformity with the cooperation agreement entered into with plaintiff.   In sustaining the mandamus complaint against defendant city the Court said:

"The city council of the city of Great Falls, since it regularly authorized the creation of the Great Falls Housing Authority, must comply with the provisions of the Act in so far as their co-operation is required.  This is in effect the mandate the legislature addressed to all cities of the state which elect to create a Housing Authority within their jurisdiction.  We said in *State ex rel. Helena Housing Authority* v. *City Council of City of Helena,* 108 Mont. 347, 90 Pac. (2d) 514, 518: 'Holding, as we must, that the matter of carrying out the plan contemplated by sections 5309.1 to 5309.36, supra, constitutes a public or governmental function, rather than a proprietary or private one, the state's right to compel cities to make expenditures therefor cannot be denied.  *  *  *  This conclusion is especially true where the city is given the right in the first instance to pass upon the question of the existence or nonexistence of the necessity for the housing project, and has found that such necessity exists and has, by its own affirmative act, created the Authority.  Under such circumstances it must follow that the city has given its consent to assume the burdens of the Act as well as to receive benefits therefrom.'  *  *  *

"We think it well to say that after proceeding with the creation of the Authority, as above mentioned under section 5309.4, whether the contract involved here be found to have been legally executed

or not, the obligation on the city council to make a new contract, the terms of which have already been agreed to, is no longer a discretionary matter. Drafting and executing the contract is merely the completion of the general obligation the city assumed when it authorized the creation of the Great Falls Housing Authority and its execution was a mere ministerial duty."

New Jersey's legislation in this area, NJSA 55: 14A-1 *et seq.*, NJSA 55:14B-1 *et seq.*, while similar to our statute, did not grant as much authority to the housing authority. Nevertheless, the Court, in *City of Paterson* v. *Housing Authority of Paterson* (1967), 96 NJ Super 394 (233 A2d 98) held that the city could not revoke an existing cooperation agreement but could terminate a proposed project in its preliminary stages.

The powers of housing commissions and their relationship with municipal governing bodies are found in and controlled by the state enabling legislation. *Housing Authority* v. *Los Angeles, supra;* 7 McQuillin, *Municipal Corporations* (3rd ed) p 609; *Renshaw* v. *Coldwater Housing Commission* (1969), 381 Mich 590.

The pertinent parts of Michigan's act are:

"Sec. 2. Any city, incorporated village or township of the state of Michigan may purchase, acquire, construct, maintain, operate, improve, extend or repair housing facilities and eliminate housing conditions which are detrimental to the public peace, health, safety, morals or welfare.

"Sec. 3. Any city, incorporated village or township may create by ordinance a commission with power to accomplish the purposes set forth in section 2 of ths act. * * *

"Sec. 4. Said commission shall consist of 5 members to be appointed by the chief administrative officer of the city or incorporated village. The

term of office of members of the commission shall be 5 years. Members of the first commission existing hereunder shall be appointed for the terms of 1 year, 2 years, 3 years, 4 years and 5 years respectively, and annually thereafter 1 member shall be appointed for the term of 5 years. Members of the commission shall serve without compensation and may be removed from office by the appointing authority. Any vacancy in office shall be filled by the appointing authority for the remainder of the unexpired term.

"Sec. 5.    *    *    *    The commission may from time to time as necessary, employ engineers, architects and consultants.

"Sec. 7.   Such commission shall have the following enumerated powers and duties:

"(a) To determine in what areas of the city or village it is necessary to provide proper sanitary housing facilities for families of low income and for the elimination of housing conditions which are detrimental to the public peace, health, safety, morals, and/or welfare;

"(b) To purchase, lease, sell, exchange, transfer, assign and mortgage any property, real or personal, or any interest therein, or acquire the same by gift, bequest or under the power of eminent domain; to own, hold, clear and improve property; to engage in or to contract for the design and construction, reconstruction, alteration, improvement, extension, and/or repair of any housing project or projects or parts thereof; to lease and/or operate any housing project or projects;    *    *    *

"Sec. 11. All deeds, contracts, leases, or purchases entered into by the commission shall be in the name of the city or village and shall be approved by the governing body of said city or village. Contracts for the purchase of necessary materials, leases with tenants and options need not be so approved.

"Sec. 12. The commission shall have complete control of the entire housing project or projects in-

cluding the construction, maintenance and operation as fully and completely as if said commission represented private owners. Contracts for construction or purchase of materials entered into by the commission shall not be required to be made through any city or village purchasing department.

"Sec. 13. All claims that may arise in connection with said housing project or projects shall be presented as are ordinary claims against the city or village; Provided, That written notice of all claims based upon injury to persons or property must be served upon the city or village clerk within 60 days from the happening of the injury, but the disposition thereof shall rest in the discretion of said commission and the cost of investigation, attorney's fees, all claims that may be allowed and final judgments obtained from said claims, shall be paid only from the operating revenue of said housing project or projects.

"Sec. 14. The notes, bonds, or other obligations or any claims of whatever nature against said housing project or projects, shall not be debts or charges against the city or village nor against any members of the commission and no individual liability shall attach for any official act done by any member of such commission.

"Sec. 39. *This act shall without reference to any other statute or to any charter, be deemed full authority for the purposes herein provided for* and for the issuance and sale of the bonds by this act authorized, and shall be construed as an additional and alternative method therefor and for the financing thereof, any provisions of the general laws of the state or of any charter to the contrary notwithstanding." (Emphasis added.)

"Sec. 40. This act, beng necessary for and to secure the public peace, health, safety, convenience and welfare of the cities and incorporated villages and the people of the state of Michigan, shall be liberally construed to effect the purposes thereof."

MCLA § 125.651 *et seq.* (Stat Ann 1969 Rev § 5.3011 *et seq.*).

In light of the stated purposes of these housing laws and the other provisions of our statute we cannot read § 11 as interposing the discretion of the City Commission between the powers and responsibilities granted to the Housing Commission and the execution of contracts to effectuate them.

We conclude that § 11 was intended by the legislature to prescribe the form of executing the contracts and the language "shall be approved by the governing body" requires only a ministerial act.

Accordingly the judgment is affirmed.

No costs. A public question.

ADAMS, J., concurred with T. G. KAVANAGH, J.