JULIA M. RYAN ET AL., PROSECUTORS, v. HOUSING AUTHORITY OF THE CITY OF NEWARK, NEW JERSEY, A BODY CORPORATE, ET AL., DEFENDANTS.

Submitted May 7, 1940—Decided October 5, 1940.

Before Justices CASE, DONGES and HEHER.

For the prosecutors, *Kanter & Kanter* (*Elias A. Kanter,* of counsel).

For the defendants, *Milton R. Konvitz* (*Frank H. Sommer* and *Samuel Roessler,* of counsel).

The opinion of the court was delivered by

HEHER, J. On March 20th, 1940, the Housing Authority of the City of Newark, a body corporate and politic created under the provisions of the United States Housing act of 1937 (42 *U. S. C. A.,* §§ 1401, *et seq.*) and chapter 19 of our session laws of 1938 (*Pamph. L., p.* 65; *R. S.* 55:14A-1, *et seq.*), presented to Circuit Court Judge Caffrey a petition, styled in the "Essex Circuit Court," averring the need of certain of prosecutors' lands for the consummation of a "public housing project for families of low income in the City of Newark," undertaken pursuant to the grants of power contained in the cited statutes, and the adoption by the Authority of a resolution reciting that it "cannot acquire" the lands "by agreement with the owner by reason of disagreement as to price" and directing the institution of condemnation proceedings under *R. S.* 20:1-30, *et seq.,* as amended and supplemented by chapter 21 of the laws of 1938 (*Pamph. L., p.* 92), and praying for the appointment of commissioners to settle compensation; and an order was thereupon made, likewise captioned in the Essex Circuit Court, appointing a time and place for a hearing thereon. Due notice was given to the landowners.

Thereupon, the landowners served notice that, on the day so fixed, they would move for the vacation of the order on the grounds (a) that the project is not a "use or purpose for which" their lands "may be taken by condemnation," since the object is "private" and not "public" in nature, and chapter 19 of the laws of 1938, *supra,* particularly section 9 thereof (*Pamph. L., pp.* 65, 75; *R. S.* 55:14A-8), is in contravention of article I, paragraph 16, and article IV, section VII, paragraph 8, of the State Constitution; (b) that the petition was "legally insufficient to confer jurisdiction," in that it failed to allege that petitioner could not "acquire" the lands "by agreement with the owners for any of the reasons stated in the statute (*R. S.* 20:1-1);" and (c) that the recital in the resolution of the Authority appended thereto of an "offer made by" it, "of the rejection thereof, and of a counteroffer, is untruthful," as was also the recital that the lands

"cannot be acquired by agreement 'by reason of disagreement as to price.' "

Judge Caffrey denied the landowners' motion, and appointed commissioners to appraise the lands and assess the damages and fix compensation. Refusing to receive testimony on the factual questions so raised, he ruled that the "application" for the appointment of commissioners "was regular on its face and the statutory requirements were fully met, as evidenced by the moving papers;" and that he was "sitting as a statutory court, and if there is any error in any of these proceedings, it should be properly raised by a writ of *certiorari.*" The landowners then sued out this writ.

The first point made is that, in such proceedings, the landowner "is entitled to dispute, in the court where the condemnation petition is filed, the factual allegations" thereof, "and is likewise entitled to a trial of the issues thus made," and the order appointing commissioners should therefore be reversed.

More specifically, it is said that the Eminent Domain act (*R. S.* 20:1-1) "contemplates a judicial proceeding;" that it "clearly entrusts this important subject of condemnation to one of two *courts,* either the Supreme Court or to the Circuit Court;" that "The condemning party must have 'power to take land * * * for public use;' " that "One of the conditions precedent (and the one asserted by the petition * * * as existing in the case at bar) is 'disagreement as to price;' " and that the statutory provision of a "hearing" on the petition connotes "power to determine (1) whether the petition is *legally sufficient,*" and (2) whether it "is *factually true.*" And the argument is that, unless it be held that "the Circuit Court, under the statute, has the power, the duty and the right—like any other Court of unrestricted common law jurisdiction—fully to hear and determine the entire issue, and all phases of the issue initiated by the condemnation petition * * *, then the procedural statute is unconstitutional since it would" deprive the Supreme Court and the several Circuit Courts of "an inherent judicial power." Reference is made to section I, paragraph 1, and section V, paragraphs 2-3, of article VI of the State Constitution.

This reasoning evinces a misconception both of fundamental principle and of the legislative scheme.

The statutory jurisdiction is not conferred upon the Supreme Court and the several Circuit Courts, but rather upon the individual justices and judges thereof, *designatio personæ*. And such grant of authority in nowise curtails the constitutionally secured judicial power of these courts. The right of eminent domain is an inseparable attribute of sovereignty—an inherent power grounded in the primary duty of government to serve the common need and advance the general welfare. The designees are mere legislative agents exercising a delegated authority. The expropriation of private property is essentially a legislative function; and the legislature may lodge the selection of commissioners to appraise the lands in such agency as it chooses, for that in essence is not the exercise of judicial authority within the intendment of the constitutional provisions adverted to. *Sinnickson* v. *Johnson*, 17 *N. J. L.* 129; *In re Application, &c., Between Lower Chatham and Little Falls*, 35 *Id.* 497; *Olmstead* v. *Proprietors of Morris Aqueduct*, 47 *Id.* 311; *Morris* v. *Heppenheimer*, 54 *Id.* 268; *Sisters of Charity* v. *Morris Railroad Co.*, 82 *Id.* 214; *affirmed*, 84 *Id.* 310; *Scudder* v. *Trenton Delaware Falls Co.*, 1 *N. J. Eq.* 694; *Coster* v. *Tide Water Co.*, 18 *Id.* 54; *affirmed, sub nom. Tide Water Co.* v. *Coster*, 18 *Id.* 518; *State Highway Commission* v. *City of Elizabeth*, 102 *Id.* 221; *affirmed*, 103 *Id.* 376.

While in the ultimate analysis it is a judicial question whether the use is "public" in nature, the "necessity" and "expediency" of the expropriation of private property are purely legislative concerns, and a hearing thereon is not essential to "due process" within the intendment of the Fourteenth Amendment of the Federal Constitution or of our State Constitution. If the common weal will be so materially subserved by the project to which the lands are to be devoted as reasonably to deserve the category of a "public" use, it is the exclusive province of the legislature to determine whether the public interest warrants the exercise of the power of eminent domain for the fruition of the plant. *Tide Water Co.* v. *Coster, supra; Olmsted* v. *Proprietors of Morris Aqueduct*,

*supra; Albright* v. *Sussex County L. & P. Com.,* 71 *N. J. L.* 303; *Hairston* v. *Danville and W. Railroad Co.,* 208 *U. S.* 598; 28 *S. Ct.* 331; 52 *L. Ed.* 637; *Cincinnati* v. *Louisville and N. Railroad Co.,* 223 *U. S.* 390; 32 *S. Ct.* 267; 56 *L. Ed.* 481. And the authority to determine the question of necessity is delegable. "Where the intended use is public, the necessity and expediency of the taking may be determined by such agency and in such mode as the state may designate. They are legislative questions, no matter who may be charged with their decision, and a hearing thereon is not essential to due process in the sense of the Fourteenth Amendment." *Bragg* v. *Weaver,* 251 *U. S.* 57; 40 *S. Ct.* 62; 64 *L. Ed.* 135. See, also, *A. Backus, Jr., & Sons* v. *Fort Street Union Depot Co.,* 169 *U. S.* 557; 18 *S. Ct.* 445; 42 *L. Ed.* 853; *Joslin Manufacturing Co.* v. *Providence,* 262 *U. S.* 668; 43 *S. Ct.* 684; 67 *L. Ed.* 1167; *Rindge Co.* v. *Los Angeles County,* 262 *U. S.* 700; 43 *S. Ct.* 689; 67 *L. Ed.* 1186; *Georgia* v. *Chattanooga,* 264 *U. S.* 472; 44 *S. Ct.* 369; 68 *L. Ed.* 796; *North Laramie Land Co.* v. *Hoffman,* 268 *U. S.* 276; 45 *S. Ct.* 491; 69 *L. Ed.* 953; *Cincinnati* v. *Vester,* 281 *U. S.* 439; 50 *S. Ct.* 360; 74 *L. Ed.* 950. But, as respects the determination of compensation for the taking, due process requires that the landowner be afforded an opportunity to be heard upon reasonable notice. *Bragg* v. *Weaver, supra; North Laramie Land Co.* v. *Hoffman, supra.* That calls for judicial action. Compare *State* v. *Jersey City,* 26 *N. J. L.* 444; *Winans* v. *Crane,* 36 *Id.* 394.

Yet it is not requisite that these justiciable questions be determined in the first instance by the legislative agency invested with the authority to select the commissioners. The requirements of due process are satisfied if a timely hearing be afforded prior to the conclusion of the proceedings. Statutes regulating the exercise of the right of eminent domain "may adopt a procedure, summary in character;" and "notice of such proceedings may be indirect, provided only that the period of notice of the initiation of proceedings and the method of giving it are reasonably adapted to the nature of the proceedings and their subject-matter, and afford to the property owner reasonable opportunity, at some

stage of the proceedings, to protect his property from an arbitrary or unjust appropriation." *North Laramie Land Co. v. Hoffman, supra.* See, also, *A. Backus, Jr., & Sons v. Fort Street Union Depot Co., supra; Louisville and N. Railroad Co. v. Western Union Telegraph Co.,* 250 *U. S.* 363; 39 *S. Ct.* 513; 63 *L. Ed.* 1032; *Oklahoma Operating Co. v. Love,* 252 *U. S.* 331; 40 *S. Ct.* 338; 64 *L. Ed.* 596; *State Board of Milk Control v. Newark Milk Co.,* 118 *N. J. Eq.* 504. And, where the statute provides for the assessment of compensation by viewers, subject to an appeal to a court, "carrying with it a right to have the matter determined upon a full trial," due process does not require a hearing before the viewers, "but is satisfied by the full hearing that may be obtained by exercising the right to appeal." *Bragg v. Weaver, supra.*

Under our procedural system, the hearing essential to due process may be had by the prerogative writ of *certiorari,* especially provided for by the Eminent Domain statute. *R. S.* 20:1-8. See, also, *R. S.* 2:81-8. The function of the special statutory tribunal of first instance is to appoint the commissioners to appraise the lands and assess the damages, if the petition on its face reveal a *prima facie* right to such expropriation and all other jurisdictional prerequisites, and satisfactory proof is filed of the giving of the statutory notice. *R. S.* 20:1-2; 20:1-6. If thereby the rights of the landowner have been invaded, through an excess or abuse of power, he may invoke, by *certiorari,* the general supervisory jurisdiction of the Supreme Court, exercising in that behalf the powers of the King's Bench to correct the wrongful exercise of authority by the special tribunal. *Morris and Essex Railroad Co. v. Hudson Tunnel Railroad Co.,* 38 *N. J. L.* 548. See, also, *Van Wickle v. Camden,* 14 *Id.* 162; *Morris and Essex Railroad Co. v. Central Railroad Co.,* 31 *Id.* 205; *Childs et al. v. Central Railroad Co.,* 33 *Id.* 324; *State, Jersey City v. Montclair Railroad Co.,* 35 *Id.* 328; *Columbia Delaware Bridge Co. v. Geisse,* 35 *Id.* 558; *State, National Railway Co. v. Easton and Amboy Railroad Co.,* 36 *Id.* 181; *Delaware, Lackawanna and Western Railroad Co. v. Hudson Tunnel Railroad Co.,* 38 *Id.* 17; *Jersey City v. National Docks Rail-*

*road Co.,* 55 *Id.* 194; *West Jersey and Seashore Railroad Co.* v. *Ocean City Railroad Co.,* 61 *Id.* 506; *Wendel* v. *Board of Education of Hoboken,* 76 *Id.* 499; *Sisters of Charity* v. *Morris Railroad Co., supra; Sisters of Charity* v. *Morris Railroad Co.,* 83 *Id.* 132.

It results that the order under review is not assailable for any of the foregoing reasons, and there is therefore no occasion to remit the cause for a hearing and determination of the "factual issues."

The next insistence is that the petition reveals "on its face" that "its purpose in taking the lands * * * was not for a 'public use,' " and the "Circuit Court was, therefore, without jurisdiction to make an order appointing condemnation commissioners."

It is said that the holding of the case of *Romano* v. *Housing Authority,* 123 *N. J. L.* 428; *affirmed,* 124 *Id.* 452, is merely that "slum clearance is a public use," and that such "is not the purpose of the taking" here, but rather "a public housing project for families of low income," and that this is not a "public use," since under both the federal and state statutes the term " 'low income' is made to depend upon the charge to be made for rent, light, heat, &c." (*i. e.,* the dwellings are available "solely for families whose net income * * * does not exceed five times the rental [including the value or cost to them of heat, water, electricity, gas, cooking range and other necessary services or facilities] of the dwellings to be provided such families, except that in the case of families with three or more minor dependents, such ratio shall not exceed six to one" [42 *U. S. C. A.,* § 1402; *Pamph. L.* 1938, *p.* 75; *R. S.* 55:14A-8]), and "the use of a dwelling accommodation is not given to all citizens and inhabitants without distinction, but that a classification is made, not in terms of need or in terms of indigency, and the right to use is made to depend upon the proportion existing between the amount of the rent charges and the amount of the income of a proposed tenant." It is maintained that "public use" necessarily means "open to all members of the public, without regard to racial distinctions, without regard to religious distinctions and without regard to financial distinctions;" and

that, "When the exercise of an advantage depends, or is made to depend, on wealth or income, that advantage is a private, and not a public, use." In sum, it is suggested that the constitutional standard is not income, but "indigent or necessitous" circumstances.

The last cited case sustains this legislation as an act of such general utility as to be within the province of the legislature; and the only question to be determined is whether there has been an excess of legislative power in thus classifying the "low income" group entitled to the benefits of the statute. We resolve it in the negative.

As revealed by its "declaration of necessity," the legislature found that "persons of low income are forced to reside in * * * insanitary or unsafe accommodations;" that "there is a shortage of safe or sanitary dwelling accommodations available at rents which persons of low income can afford and that such persons are forced to occupy overcrowded and congested dwelling accommodations;" that these conditions, constituting as they do a menace to the "health, safety, morals and welfare of the residents of the state," cannot "be relieved, through the operation of private enterprise;" and that the public interest demands the remedy provided by the act. And the term "persons of low income" is defined as "persons or families who are in the lowest income group and who cannot afford to pay enough to cause private enterprise in their locality to build or furnish an adequate supply of decent, safe and sanitary dwellings so as to enable them, without financial assistance, to live in such dwellings, without overcrowding." *Pamph. L.* 1938, *p.* 65; *R. S.* 55:14A-3.

There is no showing that the standard set down in *R. S.* 55:14A-8 for the delimitation of the favored class, *i. e.,* the ratio of income to rental, is arbitrary and unreasonable in the sense that it has no substantial relation to or is beyond the declared public need; and we are therefore not at liberty to impugn the legislative finding that, under present conditions, safe and sanitary dwellings are beyond the economic reach of the class thus demarcated. The Authority is directed "to fix the rentals for dwelling accommodations at the lowest possible rates consistent with its providing decent, safe and

sanitary dwelling accommodations;" and the operation of such project for "profit, or as a source of revenue to the municipality or the county," is forbidden. *Pamph. L.* 1938, *pp.* 65, 75; *R. S.* 55:14A-8. There is a presumption of an entirely adequate factual basis for the public need so found by the law-making body.

And it is to be noticed, in passing, that the expressed design of the Federal Housing statute was also to alleviate unemployment—present and recurring—which had then, it is common knowledge, reached a crisis of nationwide proportions. 42 *U. S. C. A.*, § 1401.

The foregoing considerations are also dispositive of prosecutors' further contention that evidence was not admissible on *certiorari* to establish the jurisdictional facts, viz.: (a) public use, and (b) inability to acquire the lands "by reason of disagreement as to price."

But the insistence is that, even so, there is a fatal deficiency of proof in both respects.

As to the first, it is said that the Authority "introduced absolutely no evidence to show for what purpose it wanted" the lands, and there is therefore no factual basis for the conclusion that the intended use is "public" in nature.

The point is frivolous. The evidence adduced lends itself to but one inference, namely, that the lands are to be devoted to the use outlined in the petition for condemnation; in fact, the parties from the first have proceeded on the hypothesis that such is incontrovertibly the case.

And there was proof of a "disagreement as to price" prior to the presentation of the petition.

For a landowner who has from the outset challenged on constitutional grounds the right of eminent domain to say that the failure to establish a disagreement as to price constitutes an omission in matter of substance would seem to be the merest quibble. Inability to acquire the lands "by reason of any other cause" likewise justifies the invocation of the statute. *R. S.* 20:1-1. But disagreement as to price was averred in the petition; and, on the hypothesis that this is a jurisdictional fact to be proved, we find that this allegation has been substantiated.

The correspondence between the landowners and the Authority conclusively establishes an inability to agree upon a price for the lands after *bona fide* efforts had been exerted in that direction. The former at first demanded $15,000, later $18,000, and finally $25,000, while the Authority tendered $7,500 as the fair value of the lands. And the landowners themselves introduced evidence pointing to an irreconcilable conflict on this question.

The writ is accordingly dismissed, with costs.