WHITE ET AL., APPELLEES, *v.* CITY OF CINCINNATI, APPELLANT ET AL.

IRETON, APPELLEE, *v.* CITY OF CINCINNATI, APPELLANT ET AL.

(Nos. 8052 and 8053—Decided May 7, 1956.)

*Messrs. Steer, Strauss & Adair* and *Mr. Charles H. Tobias, Jr.,* for appellee in case No. 8053.

*Miss Henrietta M. Bain,* for appellees in case No. 8052.

*Mr. Francis T. Bartlett* and *Mr. Wm. C. McClain,* for appellants.

MATTHEWS, J.  The plaintiffs are owners of parts of a tract of real estate containing thirteen and one-half acres, located in the eastern portion of the city of Cincinnati, with which we are concerned in these appeals on questions of law and fact.  The defendant the city of Cincinnati is a municipal corporation organized under the laws of Ohio, and the defendant Cincinnati Metropolitan Housing Authority is a body corporate and politic organized and existing under and by authority of Section 3735.27 *et seq.,* Revised Code, the state Board of Housing having determined that unsafe and insanitary housing conditions existed in the city of Cincinnati, and that a housing authority should be appointed.  By Section 3735.31, Revised Code, a housing authority is vested with all the usual powers of a corporation, but the exercise of such powers is expressly limited to the purpose which the Legislature declared, that is, "to clear, plan and rebuild slum areas within the district wherein the author-

ity is created, or to provide safe and sanitary housing accommodations to families of low income within such district." This clearly indicates that the Legislature considered that its power to create a housing authority was based on its relation to public health, safety, and morals, and it is so classified in the Revised Code. Among the sovereign powers conferred upon the housing authority is the power of eminent domain, but this power is only auxiliary and limited in its use to the accomplishment of the power to provide safe, sanitary, and low-cost housing accommodations in the district, and before it can disturb any property owner in his possession of his property, an action to appropriate must be instituted, and the tax value of the property deposited with the court.

The defendant city of Cincinnati also has the power of eminent domain to be exercised as an aid to accomplish the purposes of local self-government, conferred upon it by the Constitution and laws of the state.

By various provisions in Section 3735.27 *et seq.*, Revised Code, provision is made for co-operation between the housing authority and municipalities within the housing district to accomplish the purpose of the former, and the housing authority is also authorized to comply with any conditions which the federal government attached to its financial aid of any project designed to accomplish the purpose for which the housing authority was created.

Sometime prior to June 1954, the defendant Cincinnati Metropolitan Housing Authority concluded that the 13½-acre tract would be a desirable location for low-rent houses, constructed under its authority, to provide safe and sanitary dwelling houses at low rental. Having reached this conclusion, it did not proceed to exercise its power of eminent domain, because it discovered that in 1924, when the city of Cincinnati enacted its first zoning ordinance, this tract had been zoned as "industrial A" and was still so zoned, and under such zoning it could not be used for the purpose of residences. Thereupon, the Cincinnati Metropolitan Housing Authority applied to the city of Cincinnati to change the zone to "residence C" so that it could be used for the purposes for which the defendant Cincinnati Metropolitan Housing Authority was created to accom-

plish. In compliance with that request, and for no other reason or purpose, the council of Cincinnati, in June 1954, passed ordinance No. 254-54 amending the existing ordinance, so as to change the zone as requested. This action is to have that ordinance declared null and void, and its enforcement enjoined. The appeals to this court are upon questions of law and fact, and the hearing is, therefore, *de novo*. The cases, however, have been submitted on substantially the same evidence that the trial court had before it.

As we understand the position of the defendants, it is not claimed that the mere request of the Cincinnati Metropolitan Housing Authority is sufficient justification for a change of zone that would not otherwise be justified, notwithstanding that that was the only reason assigned at the time. It is their claim that the existing conditions justified the change and brought the matter within the discretion of the council, over which the judiciary has no control in the absence of an unreasonable and arbitrary exercise of such discretion. This requires some reference to the evidence.

As already noted, this tract was zoned as "industrial A" in 1924. The owners of the tract held their titles subject to that classification from that time to the time of the passage of the ordinance, the validity of which is challenged in this action, during which time the city of Cincinnati grew in population and as an industrial center. The condition of the area itself had not changed substantially during that period, and the only substantial change in the surrounding area was the establishment of several industries therein, some of which are large, indicating a trend toward industrial use that would, within the foreseeable future, actually engulf this area in such use. No comparable trend toward residential use appears other than the desire of the Cincinnati Metropolitan Housing Authority to acquire it as a site for multiple low-rent dwelling houses, administered by it under the law of its creation, to relieve unsafe and insanitary conditions existing in other localities, so that those unable to pay a high rental would still find safe and sanitary dwelling places.

It is not suggested that the substitution of multiple housing units for the existing structures on this tract is required to re-

lieve any unsafe or insanitary condition existing there at the present time, although the rezoning ordinance was passed for the sole purpose of accomplishing that result, if we disregard the purpose of relieving a shortage of safe and sanitary housing in Cincinnati generally.

Now, the question is whether the existence of a shortage of safe and sanitary housing in one or more locations in Cincinnati is a reasonable basis for the exercise of the police power to regulate and restrict the use of property remote from the site requiring governmental relief.

Needless to say that the primary purpose of government in this country is to promote the health, morals, safety, prosperity and general welfare of the people within its jurisdiction, and under both state and federal Constitutions power is conferred upon government to pass all manner of laws and adopt all means reasonably calculated to accomplish those objects. But this power cannot be used as a cloak for arbitrary, despotic and unreasonable action, even though the result to be accomplished might be regarded as praiseworthy. Unless the law and the means adopted have some reasonable relation to the just objects of government, it violates the requirement of due process of law found in both Constitutions.

Our state Constitution declares that all private property shall be inviolate but subservient to the public good, but when needed for a public purpose just compensation must be paid therefor, and, except in a few instances of which this is not one, must be paid before the property is taken. That, however, is entirely different from the power to regulate the use to promote health, morals, safety, etc. Even though the government may need the property to promote those objects, it cannot take it from the private owner, without making just compensation.

Both defendants to this action have the power of eminent domain under which either could appropriate this property upon making just compensation, but neither has had recourse to that power. The defendant city of Cincinnati instead has sought to exercise the police power to regulate its use. Its power to appropriate this title cannot justify a regulation of the use. The validity of its action must be tested by the extent of the power which it asserts.

It should be noted that the Cincinnati Metropolitan Housing Authority has in no way committed itself to building these dwellings upon this tract. It is entirely in contemplation and subject to many contingencies, one of which is the fact that the federal government has not bound itself to assist. The reason the federal government has not agreed to assist, it is said, is that the zone must be first changed so as to permit the building of the dwellings. But neither the wish nor requirements of the agencies of the state or federal governments, or both, can authorize or justify the disregard of constitutional provisions.

In the original answer of the Cincinnati Metropolitan Housing Authority it is stated that if it appropriated this property under its power of eminent domain, it would agree that the owners might offer evidence of the value of the property as though it had not been rezoned. The immateriality of this offer results from the fact that it is conditional and made long after the passage of the amending ordinance. The validity of the amendment must be determined by the conditions existing at the time of its enactment.

We are of the opinion that the reason assigned for the passage of this ordinance, that is, the request of the Cincinnati Metropolitan Housing Authority, cannot justify the exercise of the police powers to rezone this property. Nor can the tentative purpose to acquire it for use within the rezone purpose justify such rezoning. We reach this conclusion for the fundamental reason that, as there was no valid reason for this rezoning, it would constitute a taking of property without due process of law, in violation of both the state and federal Constitutions. Should the Cincinnati Metropolitan Housing Authority acquire title to this tract by purchase or by exercising its power of eminent domain and should then apply for a rezoning, a different situation would be presented which might justify a rezoning.

It is not suggested that the ordinance of 1924, placing this tract in "industrial A" zone, was unjustified by the facts at that time. It would be difficult to make any such contention after the lapse of thirty years of acquiescence in such zoning. We must assume now that it was properly zoned then. The owners became vested with title to their property, so zoned, subject only to the regulation of their use of the property by the proper exer-

cise of the sovereign police power. They had the right to assume that any change in the law regulating their use should have a reasonable basis relating to proper governmental purposes, that is, to the promotion of health, morals, safety, general welfare or general prosperity. So long as they remained owners they had the right to expect that and that their title would be taken from them for governmental purposes only upon just compensation therefor.

Both parties rely on the case of *St. Stephen's Club* v. *Youngstown Metropolitan Housing Authority,* 160 Ohio St., 194, 115 N. E. (2d), 385, for certain purposes, but do not agree as to its implications. As it seems to us, it sheds very little light on the issue in these cases. It was not an action to enjoin the violation of a property right by an attempted exercise of the police power. It was an action to enjoin an appropriation of property by the exercise of the right of eminent domain. What the court decided was that Sections 3735.27 to 3735.50, Revised Code, authorizing slum clearance and low-cost housing agencies were not repugnant to Section 19 of Article I of the Constitution of Ohio, and that a municipal ordinance excluding such use of the tract was no defense to the action to appropriate the property, where the municipality was under obligation to rezone the tract so as to permit such use; nor was it a defense that the tract was located elsewhere than in the slum area.

The parties in that case did not dispute that rezoning to permit that housing project would be a valid exercise of the police power. The city of Youngstown had agreed to so rezone the tract and the court, at page 203, said: "The enforceability of that agreement has not been effectively challenged." It also appeared that the provision of the decree based on the fact that rezoning had not actually been effected and providing for an injunction against taking possession of the land until the rezoning had actually taken place had not been appealed from by the defendant prejudicially affected thereby.

In that case (*St. Stephen's Club* v. *Youngstown Metropolitan Housing Authority*), the record shows meticulous compliance with all provisions of the law to point out the public purpose for which the property was to be used and to commit the public authorities with the duty of proceeding with the purpose. The

appropriation of the property was the last step, and if for some unforeseen development thereafter it should be abandoned, the public, not the property owner, would be required to bear the costs, including attorney's fees. Section 719.21, Revised Code. The public use, for which the property was to be used, had been fully determined and the public authorities committed thereto. In the case at bar, there has been no commitment. The contemplated use could be abandoned without any liability to any one. The record shows the fatal deficiency pointed out in the fourth paragraph of the syllabus of *State, ex rel. Sun Oil Co.,* v. *City of Euclid,* 164 Ohio St., 265, 130 N. E. (2d), 336, to wit: "A municipal corporation has no power or authority to appropriate lands for some contemplated but undetermined future use."

While it is true that depreciation of value resulting from rezoning is ordinarily only one circumstance to be considered in determining the validity of a zoning ordinance, it seems to us that its greatest weight should be found in such cases as the present, where it is proposed to change a zone, not because of any change of condition in the locality of the rezoning, but to satisfy or relieve a condition in some other and unspecified location. It seems clearly to be the taking of the property of one group to relieve the plight of another group. While that may be done by exercising the power of equal taxation for a public purpose, it certainly cannot be done by the exercise of the police power. Such an exercise of the police power is inherently discriminatory and violative of both due process and equal protection of the law guaranteed in both state and national Constitutions.

In *Clifton Hills Realty Co.* v. *City of Cincinnati,* 60 Ohio App., 443, 21 N. E. (2d), 993, we had before us a petition by an owner of property in the original zone to restrain a rezoning of a part of the zone owned by others, to which petition a demurrer had been sustained. In reversing the judgment, we said, at pages 451 and 452:

"While property and property rights, or as Mr. Justice Cardozo has phrased it, 'the bundle of privileges that make up property or ownership,' exist solely by sanction of law—common or statutory—they cannot, under our constitutions, be withdrawn by ordinary legislative processes. These rights or privi-

leges are conferred irrevocably, subject only to the qualification that to the extent necessary to promote the public safety, health, morals, general welfare and general prosperity, their use may be regulated. Within the ambit of that qualification, the beneficial enjoyment of the owner may be affected by restrictive legislation without compensation. As long as the thing itself is not inimical to the public welfare, the legal right to use and exclude cannot be withdrawn or repealed by the exercise of the uncompensating police power.

"If the specific thing is not only not inimical to the public welfare, but on the contrary so compatible with it that government itself desires it, government has the power not only to regulate but to take it upon providing compensation."

We still think that is a correct statement of the law and applicable to this case.

In 58 American Jurisprudence, 966, Section 39, it is said:

"For example, a spot zoning ordinance which reclassifies a particular piece of property in a residence zone so as to permit the use of such property as a mortuary or funeral home has been held unreasonable, arbitrary, and void. The same result has been reached where small areas in business or industrial districts are withdrawn from such districts and declared restricted to residences only."

And, at page 1033, *ibid*:

"Moreover, in determining the reasonableness of an amendment to a zoning ordinance changing particular property from a business to a residential district, the fact that there had been no substantial change in the neighborhood since the adoption of the original classification may be taken into consideration."

The case of *Weaver* v. *Ham,* 149 Tex., 309, 232 S. W. (2d), 704, involved an attempt to amend a general zoning ordinance of San Antonio, Texas. The third and fourth paragraphs of the syllabus, which we quote, sufficiently point out the relevancy of the decision and the attitude of the court:

"While a city had the power to adopt a basic zoning ordinance, and amend the same, its power to amend should be exercised only for the benefit of the public with due regard for the preservation of the rights of others under the original ordi-

nance, and the presumption, which would ordinarily prevail, that said amendatory ordinance was valid, would disappear upon a showing and determination by the courts that the city authorities had acted arbitrarily, unreasonably, and had abused their discretion and violated the rights of others under the original ordinance, and that said amendment bore no relation to the public health, safety, morals or general welfare of the public and constituted unjustifiable 'spot zoning.'

"Where a city has by its basic zoning ordinance declared a certain portion of that city to be in zone A, or a residential district, an amendatory ordinance changing a named block in said district to zone D, or apartment house district, constituted unjustifiable 'spot zoning,' and was, therefore, void."

For these reasons, we conclude that the plaintiffs are entitled to a decree declaring amending ordinance No. 254-54 null and void, and an injunction restraining the defendant the city of Cincinnati will be granted, as prayed for.

*Injunction granted.*

Ross, P. J., and HILDEBRANT, J., concur.