45 N.J. Super. 381 (1957)
132 A.2d 813
PASSAIC JUNIOR CHAMBER OF COMMERCE, INC., A NONPROFIT NEW JERSEY CORPORATION, ET AL., PLAINTIFFS-APPELLANTS,
v.
HOUSING AUTHORITY OF THE CITY OF PASSAIC, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 20, 1957.
Decided June 10, 1957.
*384 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. David W. Hanis argued the cause for plaintiffs-appellants.
Mr. William N. Gurtman argued the cause for defendants-respondents.
The opinion of the court was delivered by CLAPP, S.J.A.D.
This action was brought in the Superior Court, Chancery Division, by the Passaic Junior Chamber of Commerce, Inc. and Charles D. Binns, Warren Binns, Harold Binns and Russell Binns, partners, trading as Binns Passaic Iron and Brass Foundry. The defendants are the Housing Authority, the Board of Commissioners, *385 the Board of Adjustment and the Planning Board, all of the City of Passaic. On defendants' motion made before trial, Judge Grimshaw dismissed the action. Plaintiffs appeal.
By this action plaintiffs sought, among other things, to enjoin the housing authority and the board of commissioners from proceeding with a low income public housing project proposed to be erected on Chestnut Street, Passaic (where Binns' business is located) and to enjoin the board of commissioners, planning board and board of adjustment from "granting, approving or recommending any amendments or variances to the master plan, zoning ordinance or zoning map" to accommodate such a project on the Chestnut Street site. The zoning ordinance and master plan prohibit dwellings in the light industrial zone in which the site is located.
The motion was brought on before Judge Grimshaw upon affidavits submitted by plaintiffs and defendants, and it is therefore to be treated as a motion for summary judgment. R.R. 4:12-2. On such a motion the burden falls upon the moving party to show a clear absence of a genuine issue of fact. Monmouth Lumber Co. v. Indemnity Ins. Co. of North America, 21 N.J. 439, 448 (1956). Moreover, on such motions the courts will not undertake to evaluate the credibility of conflicting affidavits. We turn to the affidavits. A. Kaplen & Son v. Housing Authority of City of Passaic, 42 N.J. Super. 230, 235 (App. Div. 1956).
The parties agree that the action of the housing authority, approving the project and locating it on Chestnut Street, cannot be sustained if the authority was guilty of a palpable abuse of discretion. City of Newark v. New Jersey Turnpike Authority, 7 N.J. 377, 381 (1951). That presents the first question. Can it be said that the affidavits show clearly that there was no palpable abuse of discretion on the part of the authority?
In the affidavits submitted on plaintiffs' behalf, it is declared that the authority's determination to undertake this project and locate it at the Chestnut Street site was made "precipitately" and "secretly." The point is without merit. *386 It is definitely refuted by affidavits submitted on defendants' behalf specifying the action taken by the housing authority between February 16 and November 8, 1956, and setting out 27 items which appeared in the local press between February 17 and November 9, 1956.
Furthermore, in the affidavits submitted on plaintiffs' behalf, figures and facts are set out in an endeavor apparently to establish that it would be unwise for Passaic to undertake the project. But this does not establish a palpable abuse of discretion. Judge Grimshaw properly entered a summary judgment on the matter of abuse of discretion.
Next, some point is made by plaintiffs that, as stated in the affidavits mentioned, the Chestnut Street site is not one of the several slum areas in Passaic. No authority is cited on the subject, and (as plaintiffs seemed to concede in dealing with the constitutionality of certain aspects of this legislation) there is no provision in the act requiring housing projects to be located in a slum area. This is pointedly brought out in N.J.S.A. 55:14A-3(i), read with 55:14A-7(b). Under these statutes, the housing authority has power to (1) demolish or remove buildings from a "slum area," or (2) provide decent, safe and sanitary dwelling accommodations, or (3) accomplish a combination of the foregoing; but there is nothing to indicate that the new accommodations are to be erected in the slum area. Very similar statutes have been construed as not imposing upon the authority any requirement that the project be placed in a slum area. Hogue v. Housing Authority of North Little Rock, 201 Ark. 263, 144 S.W.2d 49, 55 (Sup. Ct. 1940); Riggin v. Dockweiler, 15 Cal.2d 651, 104 P.2d 367 (Sup. Ct. 1940); Stockus v. Boston Housing Authority, 304 Mass. 507, 24 N.E.2d 333, 338 (Sup. Jud. Ct. 1939); In re Housing Authority of City of Charlotte, 233 N.C. 649, 65 S.E.2d 761, 769 (Sup. Ct. 1951); Ferch v. Housing Authority of Cass County, 79 N.D. 764, 59 N.W.2d 849, 860, 861 (Sup. Ct. 1953); St. Stephen's Club v. Youngstown Metropolitan H.A., 160 Ohio St. 194, 115 N.E.2d 385, 389 (Sup. Ct. 1953); Blumenschein v. *387 Housing Authority of Pittsburgh, 379 Pa. 566, 109 A.2d 331, 336 (Sup. Ct. 1954), appeal dismissed 350 U.S. 806, 76 S.Ct. 68, 100 L.Ed. 724 (1955); Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 89, 130 A.L.R. 1053 (Sup. Ct. 1940); Chapman v. Huntington, West Virginia, Housing Authority, 121 W. Va. 319, 3 S.E.2d 502, 509 (Sup. Ct. App. 1939); cf. Ryan v. Housing Authority of City of Newark, 125 N.J.L. 336, 343 (Sup. Ct. 1940); but cf. Romano v. Housing Authority of City of Newark, 123 N.J.L. 428, 434 (Sup. Ct. 1939), affirmed 124 N.J.L. 452 (E. & A. 1940). The authority is given a discretion in the matter; slums at times exist in areas where it would be undesirable to erect new projects.
We come next to the questions raised with respect to the zoning ordinance. By motion made in this court some weeks before final argument, defendants, invoking our original jurisdiction, R.R. 1:5-4(a), asked us to determine whether the housing authority has to apply for a variance or an amendment of the zoning ordinance and master plan.
In that connection defendants rely on the resolution of the planning board adopted on May 16, 1956 and that of the board of commissioners adopted after a public hearing on October 2, 1956, both approving the project and the Chestnut Street site; and they claim that this action, taken with the Cooperation Agreement (herein mentioned), renders any such variance or amendment unnecessary. The point was raised in the Chancery Division by way of defense to the plaintiffs' demand for an injunction prohibiting such a variance or amendment. Though it was unnecessary for Judge Grimshaw to decide the point, defendants claim it presents a question which should now be resolved since the Federal Public Housing Administration will not advance further funds for the project unless a variance or amendment is granted, or (in accordance with defendants' contention) is held to be unnecessary. We have decided to pass upon the question, namely, whether a variance or amendment is necessary.
*388 N.J.S.A. 55:14A-11 provides:
"All housing projects of an authority shall be subject to the planning, zoning, sanitary and building laws, ordinances and regulations applicable to the locality in which the housing project is situated. In the planning and location of any housing project, an authority shall take into consideration the relationship of the project to any larger plan or long range program for the development of the area in which the housing authority functions" (italics added).
This statute settles any question as to whether such a project is subject to a local zoning ordinance. Cf. Aviation Services v. Board of Adjustment of Hanover Tp., 20 N.J. 275 (1956). For identical statutes, see e.g., Cal. Health and Safety Code § 34326 (Deering 1952); Pa. Stat. Ann., Tit. 35, § 1556 (Purdon 1937). For quite similar statutes, see e.g., Ill. Stat. Ann., ch. 67 1/2, § 10 (Smith-Hurd 1936); N.Y. Public Housing Law § 155 (McKinney 1955). Cf. N.J.S.A. 55:14D-15(i), 55:14F-4.1, 55:14G-13, 55:15-24.
However, as above stated, defendants rely upon a Cooperation Agreement made December 22, 1949 between the housing authority and the city under which the city agreed to cooperate with the authority in connection with any low rent housing project undertaken by it with the assistance of the Federal Public Housing Administration, and particularly to
"insofar as the City may lawfully do so * * *; make such changes in any zoning of the site and surrounding territory of such project as are reasonable and necessary for the development and protection thereof." (Italics added)
Under N.J.S.A. 55:14B, a statute not cited by counsel, which was adopted the same day as 55:14A, a municipality is given certain powers "for the purpose of aiding and cooperating in the planning, undertaking, construction or operation of housing or redevelopment projects" pursuant to the Local Housing Authorities Law. N.J.S.A. 55:14B-4. Under this act the governing body may by resolution at a meeting at which the resolution is introduced and without publication (N.J.S.A. 55:14B-7), "plan or replan, zone *389 or rezone any part of" the municipality and make exceptions from ordinances and change its map (N.J.S.A. 55:14B-4(d)). Further (N.J.S.A. 55:14B-4(e)), it may in like manner enter into agreements, such as the Cooperation Agreement of December 22, 1949, with a local housing authority respecting action "to be taken" by the municipality as to the power thus given it to plan and replan, zone and rezone or alter the map. For identical statutes, see e.g., Cal. Health and Safety Code § 34513(a) (Deering 1952); N.Y. Public Housing Law § 99 (McKinney 1955); Pa. Stat. Ann., Tit. 35, § 1550(j)(3) (Purdon 1937).
It has been said that under such an agreement the power to rezone given by N.J.S.A. 55:14B-4(d) becomes a duty to rezone. Siegel, "Relation of Planning and Zoning to Housing Policy and Law," 20 Law & Contemp. Prob. 419, 431 (1955). But we need not here pass upon the nature and extent of that duty; as will have been observed, the agreement to zone is here prefixed with the words "insofar as the City may lawfully do so." In general as to the binding effect of such an agreement, see Housing Authority of City of Los Angeles v. City of Los Angeles, 38 Cal.2d 853, 243 P.2d 515, 519, 524 (Sup. Ct. 1952); State ex rel. Helena Housing Authority v. City Council of City of Helena, 125 Mont. 592, 242 P.2d 250 (Sup. Ct. 1952); State ex rel. Great Falls Housing Authority v. City of Great Falls, 110 Mont. 318, 100 P.2d 915, 921 (Sup. Ct. 1940), dealing with the agreement to rezone; Ferch v. Housing Authority of Cass County, 79 N.D. 764, 59 N.W.2d 849, 869 (Sup. Ct. 1953); McNulty v. Owens, 188 S.C. 377, 199 S.E. 425, 430 (Sup. Ct. 1938); Note, "Enforceability of Contracts between Local Housing Authorities and City Councils," 50 Yale L.J. 525 (1941); cf. Con Realty Co. v. Ellenstein, 125 N.J.L. 196, 200 (Sup. Ct. 1940). In general, see Housing Authority of Los Angeles County v. Dockweiler, 14 Cal.2d 437, 94 P.2d 794, 804 (Sup. Ct. 1939).
The question we have to decide is whether the resolutions of the planning board and the board of commissioners approving *390 the site, when taken with the Cooperation Agreement and the statutes cited, amount in substance to an amendment of the zoning ordinance or to a variance. The significant circumstance here is that the board of commissioners, so far as appears, has not addressed itself to the zoning problem. The statute, N.J.S.A. 55:14A-11, clearly says that housing projects shall be subject to zoning laws. N.J.S.A. 55:14B-4(d) and (e) obviously do not repeal N.J.S.A. 55:14A-11; on the contrary they should be read with it. In that connection see N.J.S.A. 55:14B-2, referring to the Local Housing Authorities Law.
We conclude that the mere approval of the site does not effect a zoning amendment or a variance; there must be some action on the part of the appropriate municipal body or bodies, directed toward the matter of zoning and fixing the scope and terms of the zoning changes deemed to be appropriate. Cf. Housing Authority of City of Los Angeles v. City of Los Angeles, 38 Cal.2d 853, 243 P.2d 515, 524 (cf. 519) (Sup. Ct. 1952), saying that in many respects details of the matters agreed to in the Cooperation Agreement are subject to the discretionary cooperative action of the city; Rabasco v. Town of Greenburgh, 285 App. Div. 895, 137 N.Y.S.2d 802 (App. Div. 1955), affirmed 309 N.Y. 735, 128 N.E.2d 425 (Ct. App. 1955); Borek v. Golder, 190 Misc. 366, 74 N.Y.S.2d 675, 696 (Sup. Ct. 1947); St. Stephen's Club v. Youngstown Metropolitan H.A., 160 Ohio St. 194, 115 N.E.2d 385, 390 (Sup. Ct. 1953); W.B. Gibson Co. v. Warren Metropolitan H.A., 65 Ohio App. 84, 29 N.E.2d 236, 239 (Ct. App. 1940), holding that the fact that a Cooperation Agreement has been signed, does not render it unnecessary to amend the zoning ordinance; cf. White v. City of Cincinnati, 101 Ohio App. 160, 138 N.E.2d 412, 416 (Ct. App. 1956); cf. further Blumenschein v. Housing Authority of Pittsburgh, 379 Pa. 566, 109 A.2d 331, 334 (Sup. Ct. 1954), referring to an alleged interference with zoning restrictions.
It may serve to elucidate the matter, if we point out (without passing on the validity of them) some of the amendments *391 that might conceivably be made by the board of commissioners in compliance with the Cooperation Agreement. First, the board might permit residential uses in the entire industrial district. Cf. Katobimar Realty Co. v. Webster, 20 N.J. 114, 124 (1955). Or, second, it might permit such uses just at the Chestnut Street site. Defendants' counsel himself says as to the last that he is inclined to the view that this would be invalid as spot zoning, thus raising constitutional questions as to due process and equal protection of the laws as well as statutory questions under the provisions of N.J.S.A. 40:55-32 requiring a comprehensive plan. Gartland v. Maywood, 45 N.J. Super. 1 (App. Div. 1957). We do not deal with these questions; neither the circumstances which give rise to counsel's fear, nor even the zoning ordinance, are placed before us.
Third, the board of commissioners might take a course in between the two above stated. It might conclude that proper zoning should furnish protection with respect to not only the area of the project, but "all the area surrounding" it, and it might perhaps authorize the locating of community buildings and shops close by the project. In any case it might wish to adopt zoning provisions relative to the design of the proposed housing, its height, parking facilities and other matters. Siegel, supra, 419, 420, 425-428.
With these possibilities in view, all of them conjectural, we do not think we should now deal with another possibility that has been suggested by defendants, namely, that the housing authority may apply for a variance. Ordinarily an applicant for a variance cannot by-pass the board of adjustment. Borough of Cresskill v. Borough of Dumont, 15 N.J. 238, 249 (1954); cf. Tomko v. Vissers, 21 N.J. 226, 235 (1956). But in view of N.J.S.A. 55:14B-4(d), a question may be raised whether he must make application to it and if so, whether it can refuse to comply with the Cooperation Agreement. Cf. Drake v. City of Los Angeles, 38 Cal.2d 872, 243 P.2d 525, 527, 528 (Sup. Ct. 1952); Siegel, supra, 431-434.
*392 In the exercise of our original jurisdiction we need decide nothing more than that the resolutions of the planning board and governing body above referred to, do not of themselves effect a change or variance in the zoning ordinance or render it unnecessary to secure such a change or variance.
Plaintiffs press for an injunction against the granting of a variance or a change in the zoning ordinance. But, as Judge Grimshaw said, denying relief:
"When those bodies [having zoning authority] have acted, plaintiffs, if they feel aggrieved, may have that action reviewed. Certainly the court will not speculate in advance on the course of action a municipal body will take."
The rule is that ordinarily an injunction will not issue restraining a municipal body from performing some legislative function, such as amending a zoning ordinance. Cape May & Schellenger's Landing R. Co. v. City of Cape May, 35 N.J. Eq. 419 (Ch. 1882); New Orleans Water-works Co. v. City of New Orleans, 164 U.S. 471, 481, 17 S.Ct. 161, 41 L.Ed. 518, 524 (1896); Annotation 140 A.L.R. 439 (1942). There is nothing here to take the case out of the rule.
Plaintiffs also complain that the project would violate the master plan. A housing project is subject to the planning laws. N.J.S.A. 55:14A-11. However, in our state one need not adhere to a master plan, as one would to an act of legislation. Haar, "The Master Plan: An Impermanent Constitution," 20 Law & Contemp. Prob. 353, 364, 366, n. 36 (1955); cf. N.J.S.A. 55:14A-11, second sentence. Since there is no evidence of abuse of discretion, it seems to us that under N.J.S.A. 40:55-1.13 the approval of the planning board eliminates any basis for complaint here.
The final question in the case is whether N.J.S.A. 55:14A-7 is unconstitutional. Plaintiffs claim that the statute fails to provide the defendant housing authority with necessary standards in these respects: first, as to whether or not to construct new dwelling accommodations; second, as to where the accommodations are to be located; *393 and, third, as to the limitations to be placed upon N.J.S.A. 55:14A-7(c) insofar as it authorizes the authority to "comply with any conditions which the Federal Government may have attached to its financial aid of the project" (emphasis added by plaintiffs). The third question may be disposed of simply by saying that it does not appear that the clause referred to is factually involved in the present matter; and that even if it is invalid, it seems to be severable. N.J.S.A. 55:14A-25.
We return to the first point. Is there a standard governing the action of the housing authority in determining whether there is need for new housing accommodations? Plaintiffs claim that without such a standard, housing officials, in order to continue themselves in office, will perpetually build more projects. It is elementary that standards need not be expressed, provided they can reasonably be implied from the entire act, read in the light of its surroundings and objectives. In re Berardi, 23 N.J. 485, 491 (1957). N.J.S.A. 55:14A-2, taken with 55:14A-3, discloses the objectives of the Local Housing Authorities Law and provides an adequate standard on the point. An authority cannot approve new accommodations, unless within the area of the authority's operations (cf. N.J.S.A. 55:14A-3(e)), "there is a shortage of safe or sanitary dwelling accommodations available at rents which persons of low income can afford," and unless there be persons of low income, living within the area, who "are forced to occupy overcrowded and congested" or unsanitary or unsafe dwellings.
Next plaintiffs claim that there is no standard controlling a determination on the part of the authority as to where a new project is to be located. N.J.S.A. 55:14A-7 gives to the authority all powers "necessary or convenient" to carry out the purposes of the law, including the power to purchase, lease, acquire by condemnation, or otherwise, any real property. N.J.S.A. 55:14A-10 authorizes the authority to acquire property by condemnation after adopting a resolution declaring that the acquisition is "necessary" for *394 its purposes under the act. This presents the familiar question as to whether a standard of necessity or convenience is constitutional.
A standard of necessity has been repeatedly sustained in various situations where a public body has sought to condemn land located at a certain location. It is held that the question as to location is one that has been entrusted to the discretion of the body endowed with the right of eminent domain, and the courts will not interfere in the absence of an affirmative showing of fraud, bad faith or manifest abuse. City of Newark v. New Jersey Turnpike Authority, 7 N.J. 377, 384 (1951); Burnett v. Abbott, 14 N.J. 291, 294 (1954); City of Trenton v. Lenzner, 16 N.J. 465, 473 (1954); Town of Bloomfield v. New Jersey Highway Authority, 18 N.J. 237, 240 (1955); cf. Ryan v. Housing Authority of City of Newark, 125 N.J.L. 336, 340 (Sup. Ct. 1940). As to a standard of necessity or convenience, see Davis, Administrative Law § 12 (1951); cf. Federal Radio Commission v. Nelson Bros. Bond & Mortgage Co., 289 U.S. 266, 285, 53 S.Ct. 627, 77 L.Ed. 1166, 1178 (1933); Ward v. Scott, 11 N.J. 117, 125 (1952). Some discussion as to the considerations involved in the selection of a site for a housing project will be found in Woodworth v. Gallman, 195 S.C. 157, 10 S.E.2d 316, 321 (Sup. Ct. 1940). The standards attacked here can clearly be sustained.
In general as to the matter of standards in connection with the Local Housing Authorities Law, see Romano v. Housing Authority of City of Newark, 123 N.J.L. 428, 433 (Sup. Ct. 1939), affirmed 124 N.J.L. 452 (E. & A. 1940), holding that "a basic standard, and a definite and certain policy is laid down for the guidance of the administration constituting the local Housing Authority." Further see Annotations, 130 A.L.R. 1069, 1075 (1941), 172 A.L.R. 966, 967 (1948); De Vita v. Housing Authority of City of Paterson, 17 N.J. 350, 352 (1955).
A special form of mandate should be submitted, affirming the judgment below and, further, adjudging that the planning board's resolution of May 16, 1956 and the board of commissioner's *395 resolution of October 2, 1956 are not to be regarded as a variance or change in the zoning ordinance, nor do they obviate the need for such a variance or change if the project is to be located at the Chestnut Street site.