**Evelyn DAVIS et al., Plaintiffs,**

v.

**CITY OF TOLEDO, OHIO, et al.,
Defendants.**

**No. C 70–157.**

United States District Court,
N. D. Ohio, W. D.
June 3, 1970.

Gerald Lackey, Robert Kaplan, Earl H. Staelin, Toledo, Ohio, William Goodman, Detroit, Mich., Harland Britz, American Civil Liberties Union, R. Michael Frank, Toledo, Ohio, for plaintiffs.

James D. Nestroff, John Burkhart, Toledo, Ohio, for defendants.

## MEMORANDUM RE PRELIMINARY INJUNCTION

DON J. YOUNG, District Judge.

This cause came before the Court on motion for a preliminary injunction. Plaintiffs are representatives of a class consisting of all the individuals eligible for low income housing in the City of Toledo. The suit is for a declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201–02.

The facts as stipulated are:

(5) On May 28, 1938, the City of Toledo and the Toledo Metropolitan Housing Authority entered into a Cooperation Agreement to construct one thousand low-rent units. This Agreement was amended on August 26, 1940, to provide in part as follows:

> The Authority agrees that it will use its best efforts to develop the projects as rapidly as possible and to operate and maintain such projects for families of low income. The Authority agrees to keep the City fully informed as to the status of the project. The Authority agrees that when it hereafter develops a project or projects, as herein provided for, to be located in the City of Toledo, Ohio, that it will not locate any such project or projects on any site or sites not approved by the Council of the City of Toledo.

\* \* \* \* \* \*

(6) On August 12, 1968, the City Council of Toledo adopted a resolution authorizing the Toledo Metropolitan Housing Authority to apply to the Department of Housing and Urban Development for a preliminary loan in the amount of One Million Two Hundred Thousand Dollars ($1,200,-000.00) to cover the cost of surveys and plans in connection with the development of three thousand public low-rent housing units. . . .

(7) The same day the City of Toledo entered into a new Cooperation Agreement with the Toledo Metropolitan Housing Authority. Section 8 of the Agreement provides:

> No Cooperation Agreement heretofore entered into between the municipality and the local Authority shall be construed to apply to any project covered by this agreement.

(8) The agreement contains no provision which in any way gives the City of Toledo power to approve or disapprove sites selected for low-rent housing projects by Toledo Metropolitan Housing Authority. . . .

388

(9) Pursuant to the preliminary loan contract and the Cooperation Agreement approved on August 12, 1968 the Toledo Metropolitan Housing Authority undertook surveys, prepared plans, and selected sites for the four (4) low-rent housing programs described in Paragraph 3 of the Complaint in this action. The terms of the August 12, 1968 Cooperation Agreement, . . . require no approval by the City of Toledo of the four (4) low-rent public housing sites described in the complaint.

(10) On May 18, 1970, the Toledo Metropolitan Housing Authority through its Chairman, A. G. Spieker, by letter submitted these sites to the City Council for its approval or disapproval. The letter stated:

With reference to objection voiced by groups of residents of areas which builders proposed to construct Turnkey Housing for the Toledo Metropolitan Housing Authority, we want to make these points perfectly clear;

Under TMHA's Cooperation Agreement with Toledo City Council has the power to veto any TMHA project by a majority vote of Council to that effect; and TMHA will abide fully by the provisions of this Cooperation Agreement.

\*   \*   \*   \*   \*   \*

(12) The same day the City Council adopted the following resolution:

That the City Council declare (sic.) the four (4) sites presently proposed for TMHA housing unavailable that this resolution be communicated to the members of the Toledo Metropolitan Housing Authority forthwith.

(13) . . . The Council's action, which the Toledo Metropolitan Housing Authority accepts as binding, was intended to have the effect of vetoing the four (4) housing sites described in the Complaint.

■ The jurisdiction of this Court is based upon an alleged interference with the civil rights of plaintiff class. 28 U. S.C. § 1343, 42 U.S.C. § 1983. The action is properly maintained as a class action under Rule 23(b) (2) of the Federal Rules of Civil Procedure, the plaintiffs meeting the requirements of Rule 23(a) and the representatives adequately representing the class. Rule 23(c).

The motion for preliminary injunction has been limited by agreement of counsel to the question of whether the defendant City Council of the City of Toledo had authority to veto site selections made by the Toledo Metropolitan Housing Authority for low income housing.

■ There can be no question that the class of individuals eligible for low-rent housing were the intended beneficiaries of the contract between HUD and TMHA for construction of low income housing, which contract was the basis for the selection of the proposed construction sites involved in this case. The action of the City Council resulted in denying the plaintiff class these benefits. Plaintiff class is therefore aggrieved by the actions of City Council. Were this the action of a federal agency, the right of the plaintiff class to challenge the action would be clear. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). Since the question of Council's authority is pendent to the jurisdictional claim, United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the question of state standing must be considered. It can generally be said that any aggrieved individual may challenge an act of a municipal corporation. Perrysburg v. Ridgway, 108 Ohio St. 245, 140 N.E. 595 (1923). This is in accord with the federal practice. Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (2nd Cir. 1968).

It seems clear from the stipulated facts that the TMHA was under no obligation to submit the proposed sites to the City Council and equally clear that Council was acting without authority in vetoing the proposal. There is no question but that pursuant to the Cooperation Agreement of August 12, 1968, City Council surrendered any pre-existing rights it had under the earlier agreements to reject proposed building sites.

 Federal law requires that the approval of the local legislative body (City Council) be obtained on a declaration of necessity of the project, 42 U.S. C. § 1415(7) (a), and that the City Council and the local housing agency enter into certain agreements, 42 U.S.C. §§ 1410(a), 1415(7) (a). Ohio law requires submission of the sites and particular plans to the city planning commission for advice. § 3735.44 Ohio Revised Code. None of these gives City Council the power exercised here. Accord: Housing Authority of the City of Los Angeles v. City of Los Angeles, 38 Cal.2d 853, 243 P.2d 515 (1952).

This Court is therefore forced to the conclusion that the TMHA had no authority to submit the proposed site selections to City Council for approval and that the City Council had no authority to veto the selection.

Plaintiff class has shown a reasonable probability that they will prevail upon a hearing of this matter on the merits. Therefore, a preliminary injunction will issue ordering that:

(1) The defendant TMHA proceed with its selection of the four sites and construction of one hundred ninety-nine (199) units of low-rent housing and in no way be affected by the act of the City Council vetoing the site selection;

(2) That the defendants comply with the 1968 contract between defendants TMHA and the City of Toledo authorizing the defendant TMHA to proceed with obtaining bids, contracts and completing low-rent public housing without any approval from the City Council;

(3) That defendants take no action inconsistent with the Cooperation Agreement of August 12, 1968 nor any action that would jeopardize the obtaining of federal funds estimated at $15 million from the United States Department of Housing and Urban Development for purposes of construction of low-rent public housing, urban renewal, open spaces and other HUD programs in the City of Toledo, Ohio.

Bond is fixed at the amount of Two Hundred and Fifty Dollars ($250.00).