Argued February 27, affirmed May 15, reconsideration denied
June 28, petition for review denied September 6, 1978, 283 Or 235

WESTERN MILLS, INC. et al, *Appellants,*
*v.*
HOUSING AUTHORITY OF THE CITY OF
SALEM, *Respondent.*
(No. 89624, CA 7520)
578 P2d 817

John Spencer Stewart, Portland, argued the cause for appellants. With him on the briefs were David R. Trachtenberg and Kobin & Meyer, Portland.

David J. DeMartino, Assistant City Attorney, Salem, argued the cause for respondent. With him on the brief was William J. Juza, City Attorney, Salem.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

TANZER, J.

**TANZER, J.**

Plaintiff brought this breach of contract action against the Housing Authority of the City of Salem to recover expenditures it made in preparation for the construction of a low-income housing project which was to be purchased by defendant upon completion. The project was never built. Plaintiff complied with all the pre-construction requirements of the contract except one: It failed to obtain a required conditional use permit because the city council rejected plaintiff's application after a public hearing. Plaintiff did not seek review of the city council's action. Instead, it seeks to hold defendant accountable for the costs incurred in reliance on defendant's representations that it planned to proceed with the project.

The equitable basis of plaintiff's complaint arises from the fact that defendant housing authority, which encouraged plaintiff to proceed with the housing project, is composed of the same individuals as the city council which denied the conditional use permit after a public hearing. Nevertheless, the city council and the housing authority are distinct entities with different functions even though their membership is identical. ORS 456.095(1)(b) provides that "any act of the governing body acting as a housing authority shall be, and shall be considered, the act of the housing authority only and not of the governing body."

Citation to ORS 456.095(1) should be the short answer, but plaintiff's legal theory is more convoluted: plaintiff argues that its contract with the housing authority required the housing authority to enforce for plaintiff's benefit the provisions of a cooperation agreement between the housing authority and the city council, and that the cooperation agreement required the city council to approve the conditional use permit. The housing authority denies the existence of a contract and raises several affirmative defenses.

We assume for purposes of discussion that the housing authority was contractually bound to assist

[ 403 ]

plaintiff in bringing the project to a successful completion. The issue then is whether the housing authority could have compelled the city council to issue the conditional use permit.

The source of the city council's allegedly ministerial duty to issue the conditional use permit is a provision in the cooperation agreement that "in so far as the Municipality may lawfully do so," the city council would make such changes in the zoning of the site as were reasonable and necessary for the development of the housing project. Plaintiff contends that this provision obligated the city to grant a conditional use permit[1] for any housing project approved by the housing authority and that the housing authority could and should have compelled the city to issue the permit as a ministerial task.

Housing projects such as the one plaintiff sought to construct are "subject to the planning, zoning, sanitary and building laws, ordinances and regulations applicable to the locality in which the housing project is situated." ORS 456.150(1). In this case, city ordinances required plaintiff to obtain a conditional use permit before the proposed development could proceed.

The decision to grant or deny a conditional use permit is a quasi-judicial decision. *Rockway v. Stefani,* 23 Or App 639, 642, 543 P2d 1089 (1975) *rev den* (1976). Such decisions are to be made on the record after a hearing before an impartial tribunal. *Fasano v. Washington Co. Comm.,* 264 Or 574, 588, 507 P2d 23 (1973). These requirements defeat plaintiff's contention that the Salem city council had lawfully bound itself before the hearing to approve plaintiff's application: The city has no authority to pre-judge the merits of the proposed conditional use.[2]

---

[1] We assume for the sake of argument that the agreement regarding zone changes applies as well to issuance of conditional use permits.

[2] The cases relied on by the dissent are distinguishable because they do not recognize this principle, which is now firmly settled in Oregon .They

Because the cooperation agreement did not vitiate the city council's duty to consider the proposed conditional use on its merits after a quasi-judicial hearing, neither plaintiff nor the housing authority could have compelled issuance of the desired permit by invoking the cooperation agreement. This conclusion is dispositive; therefore, it is unnecessary to consider the other asserted deficiencies in plaintiff's theory of recovery.

Affirmed.

**THORNTON, J.,** dissenting.

The central issue presented is this: Did defendant breach its contract with plaintiffs by refusing to enforce the provisions of the Cooperation Agreement between the defendant-Housing Authority and the City of Salem, and were plaintiffs entitled to recover damages against defendant on account of such breach?

Contrary to the majority it is my conclusion, based on an examination of the cases cited below, that (1) defendant breached its contract with plaintiffs by refusing to enforce the provisions of the Cooperation Agreement for plaintiffs' benefit, (2) the city council had no authority to refuse to approve the conditional use permit and (3) plaintiffs were entitled to recover damages against defendant for breach of contract.

The leading case in point is *State ex rel. v. City of Great Falls et al.,* 110 Mont 318, 100 P2d 915 (1940). Subsequently *Great Falls* was cited and relied upon by the Supreme Court of California in reaching a similar

---

are also distinguishable on the facts and procedural posture. *Cuyahoga Metropolitan Housing Auth. v. Harmody,* 474 F2d 1102 (6th Cir 1973), and *Housing Authority v. City of L. A.,* 38 Cal 2d 853, 243 P2d 515 (1952), were suits by the local housing authorities to prevent the cities from withdrawing from the cooperation agreement altogether; Salem has attempted no such withdrawal. In *State ex rel. v. City of Great Falls et al.,* 110 Mont 318, 100 P2d 915 (1940), the court relied on the limited powers of a municipality under Montana law and on a statutory provision that the state housing act superseded inconsistent provisions of any other law. Neither factor is present in this case. There are other distinguishing factors as well, but these suffice.

conclusion in *Housing Authority v. City of L. A.,* 38 Cal 2d 853, 243 P2d 515 (1952), also a mandamus case.

The most recent case in point is *Cuyahoga Metropolitan Housing Auth. v. Harmody,* 474 F2d 1102 (6th Cir 1973), involving the Housing Authority of the City of Cleveland, Ohio. The United States Court of Appeals, in affirming the District Court, fully approved of the reasoning of *City of L. A.*

In all of the above cases the city councils tried to repudiate their previous legal commitments to low-rent housing projects. In each case the court held that it could not. In the interests of brevity, only *Great Falls* will be discussed.

In *Great Falls,* as in the case at bar, the city, acting under a State Housing Authorities Law, established a city housing authority and embarked upon a low-rent housing program. Thereafter it sought to repudiate its commitments. The Montana Supreme Court affirmed the issuance of a writ of mandamus by the trial judge requiring the city council to comply with the terms of the Cooperation Agreement between the City Council and the Housing Authority. Under the agreement the council had agreed to zone or rezone property and vacate and close streets, avenues and alleys in connection with the designation and construction of housing projects under the provisions of 42 USCA § 1401 et seq (1969).

In connection with the establishment of the Great Falls Housing Authority, the Housing Authority purchased eight city blocks of property and commenced the preparation of plans and specifications for the erection of a low-rent project, and selected a developer for purposes of the project. In furtherance of the project, the Housing Authority requested that the city council vacate certain streets and alleys, and also requested that the eight-block area be rezoned in a manner appropriate for the project. The city council refused and adopted a resolution rejecting the requested zoning ordinance. In affirming, the court stated:

"* * * The official machinery of the municipality was merely employed to determine the necessity for the creation of the Authority and that having been done as the free act of the city council, it had no further discretionary function to perform in the premises.

"* * * * *

"* * * The refusal of the city council * * * to comply with the requests of the Authority to vacate the streets and re-zone the location was a useless act. * * * When the council authorized the creation of the Great Falls Authority, it assumed all the obligations involved essential to a perfected project.

"* * * * *

"Another question arises as to whether the writ of mandamus will lie to compel the city council to take the necessary steps to vacate and re-zone the plot purchased by the Housing Authority. We have heretofore said in this opinion that when the city council regularly authorized the creation of the Great Falls Housing Authority, any act or thing the council was thereafter required to do in order to bring the Housing project to completion was purely a ministerial act imposed upon the city council, a state agency of the state government. Such being the case, mandamus will lie. This conclusion follows a long line of decisions by this court.

"* * * We rest our conclusions upon the ground that the Housing Authorities Law is a special Act and supersedes the purely municipal statutes upon which the respondents [the City] depend, and on the further ground that the legislature in imposing the duties that are imposed upon the city council by the Housing Act is merely calling upon one of its agents, over which it has practically complete control, to aid in perfecting a state project." 110 Mont at 327-32, 100 P2d at 920-22.

Counsel for defendant-Housing Authority in his brief attempts to distinguish the above cases from the case at bar on the facts as well as on the ground that the granting of a conditional use permit is a quasi-judicial decision.

In my view neither of counsel's arguments holds up under scrutiny. The factual distinctions are not significant and do not change the legal principles involved.

[ 407 ]

Further, the actions which the cities undertook to take in *Great Falls* and *City of L. A.,* and then sought to disavow, were as quasi-judicial as that involved in the case at bar.

Here the city authorized the creation of the Housing Authority. The members of the city council comprised the members of the Housing Authority, and vice versa. The city officials directed plaintiffs to proceed with the project with full knowledge that plaintiffs would incur substantial development costs and other financial obligations. Plaintiffs fully performed every condition necessary to the successful completion of the Browning Avenue project. The City of Salem and the Housing Authority failed to perform their respective obligations. My reading of the above authorities has convinced me that defendant should be held liable to plaintiffs for the consequences of the breach of its obligation.

For the above reasons I respectfully dissent.