The **HOUSING AND REDEVELOPMENT AUTHORITY FOR LINCOLN COUNTY, Minnesota, petitioner, Appellant,**

v.

**Al JORGENSEN, as Zoning Administrator for the City of Tyler, etc., Respondent.**

**No. C8-82-705.**

Supreme Court of Minnesota.

Jan. 21, 1983.

Thomas W. Reeves, Hendricks, Holmes & Graven and Larry M. Wertheim, Minneapolis, for appellant.

David M. Watson, Tyler, for respondent.

TODD, Justice.

The City of Tyler (city) denied conditional use permits sought by the Housing and Redevelopment Authority (HRA) for Lincoln County, Minnesota. HRA brought an action for declaratory judgment relief or a writ of mandamus, seeking to invalidate the city's action and to force the issuance of the conditional use permits. The District Court denied relief. The HRA appeals, and we reverse.

Our decision results from an analysis of the cooperation agreement entered into between the city and the HRA on April 14, 1978. The question raised is whether the city breached the agreement by denying the latter's application for conditional use permits.

The agreement involved mutual covenants: HRA would secure contracts for loans to build low-rent housing in the city and the city agreed to make reasonable and necessary zoning changes for the development of the project. The units planned to be built in the city were part of a county-wide project designated for Lincoln County. HRA proceeded with development of the project after the cooperation agreement was signed in 1978. HRA acquired two parcels of land in the city in 1979. That same year, HUD approved a loan and an annual contributions contract to build the twenty low-income public housing units in Lincoln County. (A duplex equals two housing units). The agreement called for

five units of housing to be located in the city. On March 17, 1980, the city council adopted a resolution amending the agreement to allow six units (three duplexes) to be built within the city. The amendment was executed on June 8, 1981.[1]

City officials became disenchanted with the HRA's proposal. Availability of rental space increased, reducing the need for new building in the city. In May 1981, the city council rejected a second cooperation agreement involving housing units for the elderly. Later that month, the mayor sent a letter to HUD, informing them of the city's opposition to construction of additional HUD-financed housing in the city.

Since the construction of duplexes required a conditional use permit under the city's zoning ordinance, the HRA applied for these permits for three duplexes on the two sites owned by the HRA. HRA awarded construction contracts on September 28, 1981. By that time, approximately $19,000 had already been invested in the city properties for acquisition, appraisals, various testings, and architect fees.

The city planning commission considered these applications for conditional use permits at a hearing held on October 5, 1981. HRA representatives gave a brief description of the project, the proposed construction, and the surrounding properties. Need for rental housing was discussed. City residents overwhelmingly opposed any new construction. A citizen petition from 550 city residents demonstrated this opposition. Only one out of approximately one hundred residents present at the meeting spoke in favor of granting the conditional use permits. Most based their dissatisfaction upon the lack of need for housing in a community already glutted with available rental space.

The planning commission recommended denial of the conditional use permit application. The city council—whose membership is identical to the planning commission—adopted the commission's recommendation.

Upon trial, to force issuance of the conditional use permits, the lower court failed to analyze the effect of agreement. The court did make findings that: (1) the agreement was entered into by the parties; and (2) the city sent a letter to HUD asking that no additional HUD-financed housing be located in Tyler. However, no conclusions of law were made regarding the binding effect or repudiation of the agreement. The nature and effect of the agreement calls for more analysis.

Paragraph 4 of the agreement provides that so long as the low-rent housing is publicly owned or is subject to HUD loans or annual contributions, commencing with the date of acquisition of any part of the site of project, the city shall:

(c) In so far [sic] as the Municipality may lawfully do, * * * (ii) *make such changes in any zoning of the site as are reasonable and necessary for the development and protection of such project and the surrounding territory;*

(Emphasis supplied.)

■ The agreement, we hold, required the city to issue the conditional use permits. Not granting the permits for a use allowed in an area (as opposed to a variance) violates the intent of the agreement: to help the HRA past the multiple discretionary steps needed to get projects developed. Making reasonable zoning changes includes granting necessary conditional use permits.[2] *State ex rel. Great Falls Housing Authority*

1. No reason appears in the record or briefs explaining the long delay between the city council's resolution amending the cooperation agreement and the execution of the agreement more than a year later.

2. An Oregon appeals court alternatively held that conditional use permits need not be issued, despite language in a cooperation agreement similar to the agreement under review. *Western Mills, Inc. v. Housing Authority of Salem,* 34 Or.App. 401, 578 P.2d 817 (1978). The case arose from a different procedural posture than the present case: a contractor sued a housing authority, contending that their contract required the housing authority to enforce its contract with the city, for a housing development which was never built. No analysis was offered on why the housing authority's agreement with the city was nonenforceable. We think the *Great Falls* case the better reasoned, and more forceful opinion.

*v. City of Great Falls,* 110 Mont. 318, 100 P.2d 915 (1940). *Cf. Benson Hotel Corp. v. City of Minneapolis,* 290 Minn. 14, 187 N.W.2d 610 (1971) (no intention in cooperation agreement indicating housing authority's approval of changes in street designations).

 The city raises two objections to enforcement of the agreement. First of all, they suggest the mayor's letter—expressing displeasure with housing plans for the city—to HUD repudiated the agreement. This is not so. Paragraph 9 of the agreement disallowed changes, abrogation, or modifications without the consent of HUD. A series of cases hold the agreement binding, preventing a municipality from abrogating or rescinding a cooperation agreement unilaterally. *Housing Authority of Los Angeles v. City of Los Angeles,* 38 Cal.2d 853, 243 P.2d 515 (1952), *cert. denied,* 344 U.S. 836, 73 S.Ct. 46, 97 L.Ed. 651 (1952); *State ex rel. Helena Housing Authority v. City Council of Helena,* 125 Mont. 592, 242 P.2d 250 (1952); *Ferch v. Housing Authority of Cass County,* 79 N.D. 764, 59 N.W.2d 849 (1953); *Housing Authority of Oakland v. City of Oakland,* 222 Cal.App.2d 771, 35 Cal.Rptr. 527 (1963); *Village of Dupo v. St. Clair County Housing Authority,* 253 F.Supp. 987 (E.D.Ill.1966); *Davis v. City of Toledo,* 54 F.R.D. 386 (N.D.Ohio 1970); *Cuyahoga Metropolitan Housing Authority v. City of Cleveland,* 342 F.Supp. 250 (N.D.Ohio 1972), *aff'd sub nom., Cuyahoga Metropolitan Housing Authority v. Harmody,* 474 F.2d 1102 (6th Cir.1973).

Moreover, the city's alleged repudiation is equivocal. The city council never formally passed a resolution abrogating the agreement, and the city council executed an amendment to the agreement after the mayor's letter to HUD. Under these circumstances, no repudiation occurred.

**3.** Deciding that government agencies, like HRA, are not motivated by the same profit considerations as private parties, the lower court found that lack of need for housing was an especially appropriate ground on which to deny the conditional use permits. This rationale creates a disparity of treatment in zoning matters, depending on the applying party. Had

 The city also alleged that the HRA misrepresented the binding nature of the agreement. The lower court made no finding on this issue. Although testimony was conflicting, the record indicated that the city attorney probably did advise the city council about the binding effect of the agreement. The city council rejected a second cooperation agreement (for construction of housing units for the elderly), specifically because an amendment—declaring the agreement's nonbinding effect—was never added to the agreement. The misrepresentation claim fails.

 Given our disposition, we need not decide whether the city—quite apart from breaching the cooperation agreement—formulated legally sufficient reasons, as a matter of zoning law, to deny the HRA's applications.[3]

The order of the trial court is reversed.

a private party—which had entered into a cooperation agreement—applied for the permits, they probably would have been issued. Such a disparity in treatment in zoning matters is not appropriate. *Cf. Northwestern College v. City of Arden Hills,* 281 N.W.2d 865 (Minn.1979) (two private colleges treated unequally in their applications for special use permits).